*In re* DUBINA.

1. CRIMINAL LAW—MURDER—INSANITY—COMMITMENT TO HOSPITAL.
   Person who was acquitted of charge of murder because of insanity at the time of the homicide was properly thereupon committed to the hospital for the criminally insane (Act No. 175, chap. 6, § 15c, Pub. Acts 1927, as added by Act No. 259, Pub. Acts 1939).

2. HABEAS CORPUS—CRIMINALLY INSANE PERSONS—RIGHT TO RE-
LEASE—BURDEN OF PROOF.

In habeas corpus proceedings by person committed to hospital
for the criminally insane upon acquittal of charge of murder
because of insanity at the time of the homicide, petitioner
has the burden of establishing his right to be released.

3. SAME—CRIMINALLY INSANE PERSON—REPORT OF SANITY COM-
MISSION—EVIDENCE.

In habeas corpus proceeding by person committed to hospital for
criminally insane upon acquittal of charge of murder because
of insanity at time of homicide, exclusion of report of sanity
commission in the criminal case that defendant was sane at
the time of the homicide as well as at the time of the trial
was not error as the decisive issue herein is the appellant's
sanity at time of hearing herein (Act No. 175, chap. 6, § 15c,
Pub. Acts 1927, as added by Act No. 259, Pub. Acts 1939).

4. SAME—INSANE PERSON'S EXPERT WITNESS.

In habeas corpus proceeding by inmate of hospital for the
criminally insane, basis for State's expert witnesses as to
type and extent of appellant's insanity at time of hearing
herein *held,* amply supported by record.

5. SAME—CRIMINALY INSANE PERSONS—EVIDENCE.

Record in habeas corpus proceeding by inmate of hospital for
criminally insane person *held,* to disclose abundance of testi-
mony to sustain holding he was insane at the time of the
hearing.

6. INSANE PERSONS—HABEAS CORPUS—FINDING OF COURT—EVIDENCE
—MENACE TO OTHERS—STATUTES.

Finding of trial judge in habeas corpus proceeding by inmate
of hospital for the criminally insane that petitioner was
yet insane, that his insanity was of the compulsive type due
to his sexual deviation and emotional instability and that
his release would be likely to be harmful to other persons or
their property which was amply sustained by record required
his continuance in custody as not only the committed person's
welfare but the probabilities of his release being a menace
to others were objects the legislature had in mind under stat-
ute pertaining to commitment of persons who interposed de-
fense of insanity when charged with crime (Act No. 175,
chap. 6, § 15c, Pub. Acts 1927, as added by Act No. 259,
Pub. Acts 1939).

7. SAME—ACQUITTAL OF CHARGE OF MURDER—RELEASE—EVIDENCE
   REQUIRED.
     A stronger showing of restoration to sanity is generally re-
     quired of one committed upon acquittal of charge of murder
     on ground of insanity at time of homicide in view of danger
     to society because of his release than would be required of
     one not theretofore charged or convicted of crime.

8. HABEAS CORPUS—CRIMINALLY INSANE PERSONS—RELEASE.
     In habeas corpus proceeding to release an inmate of a hospital
     for the criminally insane, it is necessary to consider the
     factual background of the one seeking release.

Appeal from Ionia; Davis (Morris K.), J. Submitted April 6, 1945. (Docket No. 79, Calendar No. 42,810.) Decided May 14, 1945. Rehearing denied June 29, 1945.

Habeas corpus proceedings by Michael Dubina to obtain his release from Ionia State Hospital for criminally insane persons. Petition dismissed. Plaintiff appeals. Affirmed.

*James B. Stanley*, for plaintiff.

*John R. Dethmers*, Attorney General, *Edmund E. Shepherd*, Solicitor General, and *Daniel J. O'Hara* and *Harry W. Jackson*, Assistants Attorney General, for defendant.

NORTH, J. This is an appeal by Michael Dubina from an order entered in the circuit court of Ionia county denying his release from the Ionia State hospital for the criminal insane. In 1941 Dubina was prosecuted on a charge of having committed murder. He successfully asserted as his defense that at the time of the homicide he was insane. See *People* v. *Dubina*, 304 Mich. 363 (145 A. L. R. 886). His present commitment under the applicable statute (Act No. 175, chap. 6, § 15c, Pub. Acts 1927, as

added by Act No. 259, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 17207–3, Stat. Ann. 1944 Cum. Supp. § 28.933 (3)]) was proper. The jurors who on the sole defense of insanity acquitted Dubina of the murder charge were instructed by the trial court that they should find him guilty: "unless the jury found him to be insane." Hence we start with the adjudicated fact that at the time of the homicide Dubina was an insane person. His petition for the writ of habeas corpus in the present proceeding asserts that he is imprisoned illegally, "and that such illegality consists in this, to wit: the said Michael Dubina is not now insane." The answer or return herein alleges "petitioner has been insane up to and until the present time and is still insane." In this habeas corpus proceeding the petitioner has the burden of establishing his right to be released. 25 Am. Jur. p. 247.

1. Appellant's first question or assignment of error, in substance, is that the trial court erred in excluding from the testimony the report of a sanity commission given at the original trial. This was the report of three psychiatrists who testified at the trial of the criminal case that in their opinion Dubina was sane at the time of the homicide and at the time of the trial. The court's ruling was not erroneous. The issue in this present proceeding is the sanity of appellant at the time of this hearing, not as of the time the original case was tried. In that case the jury's verdict did not encompass the question of Dubina's sanity at the time of the murder trial. Further, if appellant desired testimony of like purport at the hearing in this proceeding, the psychiatrists should have been produced so they could have been cross-examined.

2. Appellant's second question is: "Should expert testimony be received in evidence without first securing the factual basis on which the expert opin-

ion is based?'' Assuming appellant's contention that such testimony of factual basis must first be received, the record in the instant case is such that there would be no reversible error. As to each of the State's expert witnesses the record discloses that the background of his testimony was developed before he gave his opinion that Dubina was suffering from irresistible impulses which he cannot ·control and that his condition was such that if released he would be a menace to public welfare. · This background consisted of showing an extended period during which each of the State's expert witnesses frequently observed Dubina's conduct, that they had interviews with him, observed his reactions, and to some extent the character of Dubina's conduct during the period he has been committed. One of these experts was the superintendent of the Ionia State hospital where Dubina had been confined, the other was the doctor in the institution who had charge of Dubina's case for approximately 2 years. An ample basis was disclosed for the testimony of the State's expert witnesses as to the type and extent of Dubina's insanity at the time of this hearing. See *People* v. *Sessions,* 58 Mich. 594; 1 Gillespie's Michigan Criminal Law & ·Procedure, §§ 401, 402.

3.   The third question set forth in appellant's brief reads: ''Is there any competent evidence that petitioner was insane at the time of the hearing?'' The trial court held there was; and our review of the record discloses an abundance of testimony to sustain such holding.

4.   The remaining asserted error relied upon by appellant is disclosed by the following question: ''Is petitioner, seeking release after commitment under Act· No. 259, Pub. Acts 1939, required to prove 'clearly and convincingly' not only that he is sane at the time of the hearing but also that his

going at large will not be dangerous to public safety?'' Appellant asserts the trial judge took the position that to be entitled to release appellant must prove ''clearly and convincingly'' that he was sane at the time of this hearing, and also that his release would not endanger public safety. That is not our understanding of this record. The trial judge did not hold that because plaintiff had not ''clearly and convincingly'' shown he was sane and that his release would not be a menace to public safety, therefore appellant was not entitled to be released. Instead, after a painstaking review of the testimony, the court reached and announced this conclusion:

''The Court finds that petitioner now is insane, that his insanity is of the compulsive type, that his release would be likely to be harmful to other persons or their property.''

We are not in accord with appellant's contention, as applied to this type of case, that the court should not have been concerned with the probabilities of appellant's release being a menace to others. This, as well as the welfare of the committed person, is one of the objects that the legislature sought to accomplish by the enactment of the statute under which appellant was committed. To hold otherwise would be an inept administration of the law. The statute in providing for release of a committed person by the governor contains these words:

''The governor may, however, discharge such person upon recommendation of the commission, based upon an investigation by it and its determination that such discharge will not be harmful to other persons or their property.'' Act No. 175, chap. 6, § 15c, Pub. Acts 1927, as added by Act No. 259, Pub.

Acts 1939 (Comp. Laws Supp. 1940, § 17207–3, Stat. Ann. 1944 Cum. Supp. § 28.933 [3]).

The following is an acceptable statement of this phase of the law:

"The commitment to an insane asylum of one who has successfully defended a charge of crime by showing insanity usually occurs only in cases of homicide, and as the liberation from the asylum of one who has, while insane, killed a fellow being, is apt to be dangerous to the community, *the court generally requires a stronger showing as to the restoration to sanity of such a one,* in order to obtain his release, than in the case of an alleged incompetent who has never been convicted or charged with a crime." 19 A. L. R. 719.

A proceeding of this type necessitates consideration of the factual background of the one seeking release. Appellant's insanity is classified as "a compulsive type of insanity," insanity that is occasioned by "emotional compulsion." Appellant's status in this particular to some extent appears in the trial court's opinion from which we quote:

"It must be said at the outset that it is undisputed that the petitioner knows the difference between right and wrong. * * * On the other hand it must be said that it is undisputed that petitioner is a sex pervert, that he killed a man with whom he had had homosexual relations. * * *

"Dr. Altshuler, one of the psychiatrists who testified for the petitioner, testified in effect that insanity may manifest itself in two spheres—the sphere of reason and the sphere of emotion—or a combination of the two. * * *

"Dr. Robertson and Dr. Cook testified that petitioner is subject to compulsive acts and is therefore insane. * * * These doctors can see indications of emotional instability in the conduct of the petitioner. In this connection the Court could not help

noticing petitioner's acts in the court room, which evidenced his extreme excitability. This emotional instability plus the sex deviation is liable to result in compulsive acts. Both Dr. Robertson and Dr. Cook state in effect that petitioner now suffers from a compulsive type of insanity.''

The trial court reached the conclusion: ''That petitioner is insane and that such insanity is of the compulsive type due to his sexual deviation plus his emotional instability.'' This finding by the court and the order continuing Dubina in custody are sustained by the record. The order so entered in the circuit court is affirmed.

STARR, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.