**STATE of Missouri, Respondent,**

v.

**Joseph Senion KEE, Appellant.**

No. 58317.

Supreme Court of Missouri, En Banc.

May 13, 1974.
Rehearing Denied June 10, 1974.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Richard Boardman, St. Louis, for appellant Legal Aid Society of St. Louis.

BARDGETT, Judge.

The question to be decided is whether section 552.040, RSMo 1969,[1] which requires commitment to the director of the division of mental diseases of a defendant who is found not guilty of a criminal offense by reason of mental disease or defect excluding responsibility, is facially unconstitutional.

The defendant-appellant Joseph Senion Kee filed an application in circuit court for release from the custody of the director of the division of mental diseases pursuant to section 552.040(4). Appellant's application alleged (1) that he did not have a mental disease or defect rendering him dangerous to himself or others and that he was not unable to conform his conduct to the requirements of law, and (2) that his original commitment to the division of mental diseases, which commitment was ordered by the circuit court pursuant to section 552.040(1), violated the due process and equal protection provisions of the United States Constitution, Amend. XIV, because section 552.040(1) does not require a hearing and finding of fact that he suffered from the requisite mental disease or defect *at the time of commitment*. He contended that because section 552.040(1) does not provide for such a determination it is facially unconstitutional.

The circuit court held an evidentiary hearing at which appellant was present with counsel. The court found under the evidence that appellant had not recovered from the mental disease and further held section 552.040 to be constitutional. Kee has appealed and contends that section 552.040 is violative of the United States Constitution, Amend. XIV.

This court has jurisdiction, Mo.Const. 1945, Art. V, Sec. 3, V.A.M.S.

Kee previously filed a petition for writ of habeas corpus in the U.S. District Court for the Western District of Missouri which was dismissed as premature for failure to

1. References to statutes are to RSMo 1969 and V.A.M.S.

exhaust state remedies in that Kee had not appealed the previous denial of an application for release under section 552.040 to a Missouri appellate court. Kee v. Peterson, 317 F.Supp. 827 (W.D.Mo.1970). Thereafter Kee filed the instant petition.

Very few facts appear in the record on the instant motion and briefs. From the record and briefs filed in this case and the memorandum order in Kee v. Peterson, *supra*, it appears that the underlying factual situation is as follows. Kee had been charged by information with robbery in the first degree. On July 19, 1967, following the filing of the information, Kee was ordered by the circuit court of the City of St. Louis to the Missouri State Hospital No. 1 for psychiatric examination. Presumably that mental examination was ordered on motion of Kee. After that mental examination was completed, Kee entered a plea of not guilty by reason of mental disease or defect and filed notice that he had no other defense pursuant to section 552.030(2). Shortly thereafter, on January 23, 1968, Kee appeared in person and with counsel in circuit court. At that time the court considered the report of the mental examination, to which the state and Kee were in agreement, accepted appellant's plea of not guilty by reason of mental disease or defect excluding responsibility, entered judgment accordingly and committed appellant to the custody of the director of the division of mental diseases pursuant to sections 552.030(2) and 552.-040(1).

All of the evidence at the hearing on the instant application was that Kee was still suffering from paranoid schizophrenia, that this mental condition renders him dangerous to the safety of others, and that he was still unable to conform his conduct to the requirements of law. The trial court so found.

The case is one where, at a minimum, the appellant agrees that he suffered from a mental defect excluding responsibility as of the date of the robbery he was charged with committing and does not contend on this appeal that the trial court erred in finding that he has not recovered from that mental illness or that he is dangerous to others and cannot conform his conduct to the requirements of law. In short, it appears that appellant accepts the factual determination of mental defect as of the date of the robbery and that agreement continued to the date of the trial court judgment of March 16, 1973, on the instant motion.

Appellant's contention on appeal is that his confinement is unconstitutional because on January 23, 1968—the date his plea was accepted and he was committed—there was no hearing or finding of fact that he was on that date still suffering from the mental condition that he was suffering from on the date of the offense.

Section 552.040(1) does not require that such a hearing be held or that the court find that, on the date of commitment, the defendant is then and there still suffering from the mental defect that he had at the time of the offense and upon which his plea of not guilty by reason of mental disease or defect was founded.

It is the absence from section 552.040(1) of a requirement that the circuit court hold a hearing and make a finding of *present* mental defect that constitutes the basis for appellant's claim that the statute is facially unconstitutional under the U.S. Constitution, Amend. XIV.

Before proceeding to a resolution of appellant's points, there are certain observations that should be made in order that the issue will remain in focus. This case does not involve those sections of chapter 552 which are concerned with the mental fitness of a defendant to understand the nature of the proceedings or assist in his own defense. Sec. 552.020. Nor does it question the validity of the provision by which it is determined that a defendant had a mental defect excluding responsibility for the offense, whether that determination be made on a plea of not guilty by reason of

mental defect where other defenses are waived and the plea is accepted by the state, or by judge or jury, where the issue is contested. Sec. 552.030.

It is appellant's position that the due process provisions require that the court make a finding of *present* mental defect existing at the date of commitment before he can be validly committed to and confined in a state institution—deprived of his liberty. His equal protection claim is that section 552.040 imposes an unreasonable, arbitrary, and invidious distinction between "civil" and "criminal" commitments in Missouri.

■ Commitment proceedings, whether civil or criminal, are subject to both the equal protection and due process clauses of the Fourteenth Amendment. Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); State ex rel. Hoover v. Bloom, 461 S.W.2d 841, 843 (Mo. banc 1971).

■ "Criminal commitment" proceedings as used herein mean those proceedings under which a person, who has been charged with a criminal offense and who asserts he is not liable to criminal punishment because, at the time of the offense, he suffered from a mental disease or defect excluding responsibility, and who, after being acquitted upon that ground, is committed to the division of mental diseases. In Missouri these proceedings are governed generally by chapter 552 and in particular sections 552.030 and 552.040. "Civil commitment" proceedings are governed generally by sections 202.783 through 202.875 and are different from the provisions applicable to criminal commitments.

■ The point of difference stressed here is that under the civil involuntary commitment, pursuant to section 202.807, the subject is afforded a hearing and the court must make a finding that he is mentally ill and in need of custody, care or treatment in a mental facility. Section 202.010(12) defines mental illness for the purpose of chapter 202 as follows: " 'Mental illness' is a state of impaired mental function and includes alcoholism or other drug abuse to such extent that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, and without regard to whether or not such person has been adjudicated legally incompetent; . . .."

Civil commitment under section 202.807 does not presuppose that the person has committed an act which, if done by a mentally sound person, would be a crime and authorize criminal punishment.

A criminal commitment under sections 552.030 and 552.040 cannot be had unless the person (1) has been charged with a criminal offense, (2) has initiated the affirmative defense of mental disease or defect excluding responsibility, and (3) has been acquitted by a judge or jury upon the specific affirmative finding of mental disease or defect excluding responsibility, or where the defendant waives all other defenses and seeks acquittal on mental disease or defect and the state accepts the plea.

As a prerequisite to a criminal commitment being ordered under sections 552.030 and 552.040, it is essential that the defendant have committed a criminal act. In this case the act was first-degree robbery. Society does not condone robbery or any other criminal act whether committed by a sane or insane person but does relieve the insane of criminal punishment. When this type of conduct is engaged in as a consequence of a mental defect, it is reasonable to believe that it may be repeated until the defendant is cured. This is so because it is the essence of the defense of mental defect that the defendant did not appreciate that what he did was wrong or, if he did know it was wrong, he was incapable of conforming to the requirements of law.

Thus the difference between civil and criminal commitments in Missouri is prin-

cipally based upon the fact that in the former there need be no prior criminal act committed whereas in the latter it is essential that the defendant have committed a prior criminal act.

In Baxstrom v. Herold, *supra,* the court said, "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." 383 U. S. at 111, 86 S.Ct. at 763. The court there found an absence of equal protection in the application to the petitioner of one of two different methods of civil commitment.

In State ex rel. Schopf v. Schubert, 45 Wis.2d 644, 173 N.W.2d 673 (1970), the Supreme Court of Wisconsin rejected an equal protection attack upon a Wisconsin statute that requires a person acquitted by reason of insanity at the time of the offense to be committed to a mental hospital. The court said: "The equal protection clause disapproves only irrational and arbitrary classifications. The classification made by the legislature in the instant situation between civil commitment and criminal commitment is neither irrational nor arbitrary, and, in fact, is perfectly reasonable.

"The petitioner, by establishing his mental incapacity under the ALI test, has justified the automatic commitment imposed on him. Concern for the general safety of the community requires at least this much. Thus, the difference in procedure does not offend the constitutional provisions requiring equal protection of the law." 173 N. W.2d at 677.

Appellant argues that Baxstrom v. Herold, *supra,* is authority for the proposition that the differences in Missouri between civil and criminal commitments violate equal protection. Baxstrom was convicted in New York of second-degree assault and sentenced to a term of two and one-half to three years in prison and near the end of his term was committed to a state mental hospital for the criminally insane without a

judicial hearing under procedures which differed substantially from those available to prisoners not nearing the end of their sentences. The Supreme Court of the United States held, "We hold that petitioner was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed at the expiration of his penal sentence without the jury review available to all other persons civilly committed in New York. Petitioner was further denied equal protection of the laws by his civil commitment to an institution maintained by the Department of Correction beyond the expiration of his prison term without a judicial determination that he is dangerously mentally ill such as that afforded to all so committed except those, like Baxstrom, nearing the expiration of a penal sentence." 383 U.S. at 110, 86 S.Ct. at 762.

In *Schopf* the Wisconsin Supreme Court distinguished *Baxstrom* as follows: "A reading of *Baxstrom* makes it clear that what was objectionable there was that he was civilly committed by a procedure radically different from the procedure used to civilly commit others. The only reason for this was that he was a prisoner about to complete his sentence.

"The denial of equal protection arose as a result of providing two different methods of *civil* commitment and with no reasonable basis for it.

"In the instant case, the difference in procedure is not between persons civilly committed but rather the difference arises between civil commitment and criminal commitment after a verdict of not guilty by reason of insanity. Thus, on this basis, *Baxstrom* can be distinguished from the instant situation." 173 N.W.2d at 676.

In Chase v. Kearns, 278 A.2d 132, 138 (Me.1971), the Supreme Court of Maine adopted the foregoing language from *Schopf* and further held: "In our opinion the distinction our Legislature has seen fit to employ in the procedures for civil and criminal commitment and release is neither

irrational nor arbitrary. It has a relevance to a proper legislative purpose which the distinction was intended to serve.

"As we found in *Shackford* [State v. Shackford, Me., 262 A.2d 359 (1970)] the finding by the jury that a defendant, because of his mental disease or defect, shall be held blameless for an act otherwise subject to criminal sanctions puts such a defendant into an exceptional class. The special interest which the public has acquired in the confinement and release of people in this exceptional class results from the fact that there has been a judicial determination that they have already endangered the public safety and their own as a result of their mental conditions as distinguished from people civilly committed because of only potential danger.

"We hold that the distinction in commitment and release applying to Petitioner, as a member of this exceptional class, is a reasonable requirement for the protection of the Petitioner and of the public interest."

Other cases upholding automatic commitment statutes are reviewed in 50 A.L.R.3d 144 (1973) and 145 A.L.R. 892 (1943). See also the extensive comments and analysis of the Missouri Mental Responsibility Law at 19 J.Mo.Bar 646–738 (1963).

Appellant also cites United States ex rel. Schuster v. Herold, 410 F.2d 1071 (2d Cir. 1969), Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1969), and Gomez v. Miller, 341 F.Supp. 323 (S.D.N.Y.1972), in support of his position that section 552.040 is violative of the equal protection clause of the Fourteenth Amendment.

*Gomez* concerned a New York law which authorized the commitment to hospitals for the criminally insane of persons charged with felonies but not tried because of incompetency to stand trial under procedures substantially different from those applicable to other commitments of those alleged to be dangerously mentally ill. The case is not in point.

In *Schuster* the appellant was not acquitted on a finding of insanity but was convicted of murder in the second degree and sentenced to a term of from 25 years to life in 1931. While serving that sentence, Schuster was transferred to a New York state hospital for the criminally insane by the prison warden upon the certification of a single prison doctor that Schuster was "in his opinion insane". The New York parole board policy precluded the possibility of parole for any prisoner as long as he was in the hospital for the criminally insane. Schuster disclaimed insanity and there was no hearing or judicial determination of insanity other than the administrative procedure mentioned herein.

In the instant case appellant claimed by his pleading that he suffered from a mental defect excluding responsibility. He did undergo a mental examination in which the doctor found him to be suffering from the mental defect claimed by appellant. The state agreed with the results of the mental examination and the court, upon consideration of the report, found the appellant to have suffered from the mental defect claimed by appellant and granted appellant the relief he sought—not guilty by reason of a mental defect excluding responsibility. Thus it is seen that appellant had been declared "insane" and he makes no complaint about the validity of that finding. In *Schuster* the appellant never was afforded any hearing nor any judicial determination of sanity.

In Bolton v. Harris, *supra,* Bolton was found not guilty by reason of insanity and committed to a mental institution pursuant to D.C.Code section 24–301(d) which requires such a commitment when a defendant is acquitted on the ground of insanity. The court held that the trial of Bolton determined only that there was a reasonable doubt as to his sanity at the time the offense was committed. However, section 552.030(7, 8) requires an affirmative finding that the defendant suffered from a mental disease or defect excluding responsibility whenever an acquittal is based on

that defense. Thus there has been a determination that the defendant had a mental defect and the acquittal is not merely premised on a reasonable doubt concerning the defendant's sanity.

While this is perhaps sufficient to distinguish *Bolton* from the instant case, the court in *Bolton* also noted that the statutory scheme with reference to release would conceivably allow a patient committed as a result of being acquitted on the grounds of insanity to remain in the hospital for the rest of his life without a judicial determination that he is mentally ill or that he is likely to commit dangerous acts.

The Missouri statute on release, section 552.040(4), is not subject to the construction the *Bolton* court placed on the D.C. Code. In Missouri the prisoner adjudicated not guilty by reason of mental disease or defect can initiate proceedings to be reexamined and perhaps released the moment he arrives at the state mental hospital.

To support his Fourteenth Amendment due process contention, appellant cites *Specht, Baxstrom,* and *Bolton.*

In *Specht* the petitioner had not been acquitted on the grounds that he suffered from a mental defect. He was charged with "indecent liberties" and convicted of that offense which covered a maximum sentence of ten years. Specht was not sentenced under the "indecent liberties" statute but was sentenced under the sex offenders act for an indeterminate time of from one day to life without notice and full hearing. The Supreme Court of the United States said: "The Sex Offenders Act does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. That is a new finding of fact (Vanderhoof v. People, 152 Colo. 147, 149, 380 P.2d 903, 904) that was not an ingredient of the offense charged. The punishment under the second Act is criminal punishment even though it is designed not so much as retribution as it is to keep individuals from inflicting future harm. United States v. Brown, 381 U.S. 437, 458, 85 S.Ct. 1707, 1720, 14 L.Ed.2d 484." 386 U.S. at 608–609, 87 S.Ct. at 1212.

The common thread that runs through *Specht,* Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962), *Baxstrom,* and *Schuster,* is that the defendants in those cases did not contend they ought to be acquitted on the grounds that they were insane. In *Baxstrom, Specht,* and *Schuster,* the defendants were convicted of the criminal charge. Baxstrom and Schuster went to the penitentiary as sane men. Thereafter, Baxstrom and Schuster were administratively declared insane without a hearing or judicial finding. The declaration of insanity was not directly related to the criminal case and was substantially different from involuntary civil commitment and release procedures. These two cases do not hold that it is violative of due process or equal protection for a defendant who has been acquitted upon his plea of and a finding of "insanity" to be automatically committed to a mental institution. In *Schuster* the court said, 410 F.2d at 1089: "We have dealt here solely with the criminal who allegedly becomes mentally ill *after* his imprisonment." (Emphasis ours.)

Appellant does not cite a case of the United States Supreme Court or of this court which requires that a hearing be conducted prior to commitment in situations where a defendant pleads not guilty by reason of mental disease or defect and there is an express finding that the defendant is not guilty by reason of mental disease or defect. Consequently the rationality of the statutory scheme prescribed by our legislature must be considered in light of certain policy considerations. The Supreme Judicial Court of Maine focused upon the prime consideration in Chase v. Kearns, *supra,* 278 A.2d at 135: "Once a defendant has been found 'not guilty by reason of mental disease or mental defect', special factors and policy considerations rationally justify immediate commitment in-

asmuch as such a defendant *might or could be* incapable of controlling his behavior, *might or could be* an instrumentality of harm to himself or others, *might or could be* in need of study, observation and treatment for the accomplishment of which, in the shortest possible time, hospital confinement is reasonable." *Chase* further states that "it is unavoidable that between the verdict and the determination as to defendant's then existing mental condition a time lapse must occur." 278 A.2d at 134.

In distinguishing the *Bolton* case, we cited the feature of section 552.040 which allows for the committed individual to petition for reexamination immediately upon arrival at the institution. The Supreme Court of Wisconsin found this aspect of its statutory scheme to be a significant factor in determining compliance with due process, stating: "This factor alone is sufficient to distinguish the instant situation from the procedure questioned in *Bolton* and *Specht*. . . . Furthermore, in *Bolton* the court found that it was permissible for the prisoner to be detained for a reasonable period without a judicial determination of present mental condition. The purpose of this period of detention would be for examination. So, too, here the prisoner is sent to central state hospital, but with the right to petition for an examination the minute he arrives. Thus, this right creates a situation which is almost identical to the one provided in *Bolton*. In both situations the prisoner can be committed without a judicial determination of his present mental condition. In *Bolton,* this commitment is for a reasonable period for examination. In Wisconsin the length of this period is determined by the prisoner himself. When he petitions for the examination, he gets it.

"Thus the majority of the court are satisfied that the Wisconsin procedure questioned here is not unconstitutional as a denial of due process of law." State ex rel. Schopf v. Schubert, 45 Wis.2d 644, 173 N.W.2d 673, 678–679.

This court holds that section 552.040, RSMo 1969, is not violative of the due process and equal protection provisions of the United States Constitution, Amendment XIV.

The judgment is affirmed.

DONNELLY, C. J., and MORGAN, HOLMAN, HENLEY and FINCH, JJ., concur.

SEILER, Judge (dissenting).

Originally I concurred in result in the majority opinion in this case, on the theory that a post-commitment hearing on the question of insanity satisfies due process. However, after further reflection and hearing oral argument in the case of State v. Kent, No. 58531, which raises substantially the same issue, I am convinced that due process will not be satisfied unless a defendant, acquitted on the basis of mental disease or defect at the time of the alleged offense, is afforded a hearing on the question of sanity prior to commitment. I therefore respectfully dissent and withdraw my concurrence.

We do not imprison people in this country without first proving a case against them. We do not confine them first and then make them prove they should be released. But here we do, simply because the defendant has successfully interposed the defense of not guilty by reason of mental disease or defect. This comes close to being a form of punishment for using the defense. If we could say that the commitment was always close enough in time to the offense charged, so that it could reasonably be said that the mental disease or defect existing at the time of offense was still persisting as of the time of the commitment, then perhaps due process would be satisfied by a prompt post-commitment hearing. But the fact is that there are many cases where a period of two or three years or more passes from the time of the offense to the time of trial, yet the statute inexorably requires commitment. To put a defendant in what is the equivalent of prison on the unfound-

ed assumption that his mental condition today is the same as it was two or three years ago is not due process, in my opinion.

In addition, once he is committed to the state hospital as criminally insane, without a hearing, we then put the burden of proof and effort on him to prove that he does not have and is not likely to have mental disease or defect rendering him dangerous or unable to conform. We would not tolerate taking a man's property away from him under these conditions and we should not do so with his freedom.

The court, however, believes the post-commitment hearing satisfies due process and while the nature of that hearing is not discussed, it seems to me that if it is to afford any due process, then that hearing must be an opportunity for a genuine test in court of whether the defendant should be released, which in turn means assistance of counsel, including appointed counsel for indigents, unimpeded access to the courts, a prompt hearing on the application, independent psychiatric examination, compulsory process, discovery, confrontation and cross-examination of witnesses, and adequate findings by the trial court.