STATE of Missouri, Plaintiff-Respondent,

v.

Charles E. MONTAGUE, Defendant-Appellant.

No. 35149.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 4, 1974.

unable to conform his conduct to the requirements of the law."

A hearing was held at which Montague was represented by counsel, after which the application was denied without prejudice. The superintendent did not appear at the hearing either in person or by counsel. Montague appealed to this court. Although Montague was not a moving party, and although the application denied was that of the Superintendent, Montague is an "aggrieved party" for purposes of appeal. Certainly the action of the trial court affects him and the provisions of Section 552.040 require that he be served and notified of the hearing. These provisions effectively make him a party to the proceeding.

Section 552.040 does not expressly provide for an appeal. Montague invokes the jurisdiction of this court under Section 512.020, as a special order after final judgment. The respondent State agrees. Whether we treat the application for release as a new action or as a motion after judgment we do not find it to be an appeal prohibited by Constitution or statute and conclude it is appealable under 512.020.

Turning to the merits we deem it important to point out certain features of Chapter 552 before turning to the evidence adduced at the hearing. Initially it is to be noted that nowhere in Chapter 552 is "mental disease or defect" defined except in the context of what it is not. It obviously includes congenital and traumatic mental conditions and mental diseases, but excludes alcholism and drug abuse without psychosis, sociopathic abnormality alone, and sexual psychopathy alone. It is not restricted to "psychosis."

Sections 552.020, 552.030, and 552.040, set forth three different situations in

Richard Boardman, James W. Sherby, Legal Aid Society, St. Louis, for defendant-appellant.

Brendan Ryan, John F. White, St. Louis, John C. Danforth, Atty. Gen., G. Michael O'Neal, Dan Summers, Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

In 1963, Missouri enacted a new code dealing with criminal proceedings involving mental illness—a "mental responsibility law". Chapter 552.[1] This case presents for the first time in the state the question of what standards are to be applied under Section 552.040 in determining whether an individual should be released from a state mental hospital.

Charles Eugene Montague was tried for Murder in the first degree in 1959. The jury verdict found him not guilty "on the sole ground that the defendant was insane at the time of the commission of the offense charged" and that "the defendant has not entirely and permanently recovered from such insanity." Thereafter, following the procedure then in force, Montague was committed to State Hospital No. 1 pursuant to Section 202.070 RSMo 1959. In 1972 the Acting Superintendent of the State Hospital filed an application "for the unconditional release of [Montague] pursuant to Section 552.040,"[2] asserting that Montague "does not have, and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to himself or others or rendering him

1. All statutory references are to RSMo 1969, V.A.M.S. unless otherwise indicated.

2. Although Montague was committed prior to the enactment of Chapter 552 no question has been raised that his release is determined by that Chapter. The provisions of Section 552.-

040 have been held remedial in nature and therefore applicable to pre-existing commitments. See State ex rel. Hoover v. Bloom, 461 S.W.2d 841 (Mo. banc 1971) [1]; Cyronne-DeVirgin v. State of Missouri, 341 F.2d 568 (8 Cir. 1965).

which "mental disease or defect" have legal significance in a criminal proceeding.[3] But in each situation it is not the existence of "mental disease or defect" *per se* which brings the section into play, but the effect of such disease or defect in one specific area. In Section 552.020 it is the effect of the disease or defect upon defendant's capacity to defend himself that is critical. In Section 552.030 it is the effect of the disease or defect upon defendant's actions in committing the crime. In section 552.-040 [4] defendant must be free of any disease or defect which might cause him to be dangerous to society or himself. These various provisions reflect a legislative intent to modernize the criminal law as it relates to mental problems of defendants. Instead of requiring a generalized finding of "insanity" the Mental Responsibility Law attempts to provide a nexus between the mental condition existing and the facet of the criminal proceeding to which that condition is pertinent.

■ While it is possible, of course, that a given mental condition may meet the tests of all three sections, it is also possible that a given mental condition may bring the provisions of one section into play but have no relevance to another section. More precisely it is possible that a defendant confined because of mental disease excluding responsibility may have recovered from that disease, while at the same time be suffering from a mental condition which does not exclude responsibility but does make him dangerous to others. In short, proof that the condition which originally caused the commitment has been cured does not *per se* entitle the defendant to be released.

The Missouri act is unlike that of some other states and of the Model Penal Code which base the determination of release upon the sole question of dangerousness without regard to whether that dangerousness is the product of mental disease or defect.[5] The language of the Missouri act conditions release upon freedom from "mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law."

■ We find that the statutory language used and the policy behind the law, as enunciated by the courts of other jurisdictions,[6] place the burden of establishing facts to support release upon the applicant for such release. It is unnecessary to rely upon a presumption of continuing mental disease to so conclude. Defendants who have been acquitted of criminal conduct because of mental problems are in a special class. See State v. Kee, 510 S.W.2d 477 (Mo. banc 1974). Their mental state excludes their responsibility for their conduct, yet that mental state also constitutes them a danger to society, a fact established by their conduct. While it is just that they not suffer the usual penalties for their conduct, it is also just that such conduct when based upon mental disease or defect, should not again threaten society. The statute recognizes this balance and authorizes release only when a *court* is convinced that no mental disease or defect exists which makes the defendant dangerous.

---

3. There is additionally Sec. 552.060 involving execution of a death sentence and the impact of mental disease or defect on that.

4. " . . . no person shall be released from such commitment until it is determined through the procedures provided in this section that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law."

5. See American Law Institute, Model Penal Code, Tentative Draft No. 4, (1955) Sec. 4.08 and comments thereon.

6. Newton v. Brooks, 246 Or. 484, 426 P.2d 446 (banc 1967) ; State v. Blubaugh, 80 Wash. 2d 28, 491 P.2d 646 (banc 1971) ; Ex parte Dubina, 311 Mich. 482, 18 N.W.2d 902 (1945).

The evidence at the hearing came solely from a Dr. Tellez, a psychiatrist employed by the division of Mental Diseases.

Montague had been under the care of the division for 14 years at the time of hearing. The psychiatrist's testimony was that Montague had been psychosis free for seven years and off medication for a similar period. The import of the testimony is that the condition which furnished the basis of the jury verdict had been cured. It was also the doctor's opinion based upon his clinical observation that he "might say that" Mr. Montague does not have and in the future is not likely to have a mental disease or defect rendering him dangerous. The clinical observations, testing and other details forming the basis for this conclusion were not stated.

We believe, however, that a realistic reading of the testimony indicates that the psychiatric testimony was directed toward Montague's freedom from psychosis. There was testimony which could cause a trier of fact to question whether Montague was in fact free from mental disease or defect which might posit danger. We set out that portion of the evidence which raises the questions.

Montague was examined from time to time and drugs were discontinued and no overt psychosis was found but "he had now and then behavior problems but never associated with psychosis." "[H]e had reached a criteria of complete remission of his psychosis without medication." The division recommends unconditional release because "we found reasonable and protected place that he can reside; . . . and supervision as well . . . ." Montague was to receive employment at a V. A. hospital where he could "enroll himself in any out-patient service" so that "[A]ny emotional or mental disorder might recur he would be perfectly supervised."

At the beginning of the seven year period of no psychosis Montague had been placed in a minimum security portion of the hospital facility. He had had "now-and-then behavior problems" including at least one drinking episode and an episode of picking up drugs from other patients. These resulted in his being placed back in maximum security for disciplinary reasons. This stay lasted for 3 years. In 1972 the psychiatrist described Montague's behavior and adjustment throughout his stay in the hospital as "marginal". In the same report Montague was described as having a limited understanding of his problem. A Rorschach test given within five years of the hearing indicated he was "actually more of a sociopathic more than anything else. No evidence of overt psychosis at all." Montague "has emotional problems."

The doctor's explanation of Montague's drinking episode was as follows:

"In this particular case, if I might explain, he was acquainted with a female in the outside which everybody respect and we allow him to be visited by her. Unfortunately, I don't know what happened, female decide to withdraw and he became anxious and upset why this lady had not come to visit him any more.

"That is what triggered him to look for some kind of sedation or something to minimize his emotional problem with the situation. It last only a few weeks, not a month when he finally forgot about his affair with this lady . . . . ."

There was additional evidence of long-standing mental problems including a permanent and total disability from the military apparently based upon his mental condition.

We need not determine whether Montague has a mental disease or defect making him dangerous. We need only determine whether the evidence clearly establishes his freedom from such condition. We find it does not. While the psychiatrist's opinion is entitled to weight, the ultimate decision is vested by the statute with the trial court and it is only upon its finding that the statutory requirements have been met that release can be granted. "The

ultimate determination *must lie within the* socio-legal discipline of the court after careful consideration of the evidence and opinions submitted by . . . expert physicians." People v. Corrente, 63 Misc. 2d 214, 311 N.Y.S.2d 711, 1. c. 714 (N.Y. Sup.Ct.1970). A trial court may properly require more evidence than a psychiatric opinion before concluding that an application for release should be granted. See generally Missouri's Mental Responsibility Law, A Symposium, J. of Mo. Bar, Dec. 1973, and specifically p. 721–2. While the evidence may here warrant a conclusion that Montague is psychosis free, it does not compel a conclusion that he is free of dangerous mental disease or defect. The above recited evidence created a question concerning Montague's present mental health. The psychiatric conclusions are not supported by any objective facts, tests, observations, reports, histories or examinations from which to test the conclusions. The evidence is simply not complete enough to justify us in concluding that the burden of proof has been met.

Judgment affirmed.

CLEMENS and McMILLIAN, JJ., concur.