STATE of Missouri, Plaintiff-Respondent,

v.

Roy Edwin DAVEE, Defendant-Appellant.

No. 10440.

Missouri Court of Appeals, Springfield District.

Oct. 11, 1977.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 31, 1977.

Application to Transfer Denied Dec. 19, 1977.

David A. Geisler, Asst. Pros. Atty., Greene County, Springfield, for plaintiff-respondent.

Michael Baker, Springfield, for defendant-appellant.

Before TITUS, P. J., and PARRISH, CASTEEL and HENRY, Special Judges.

JOHN E. PARRISH, Special Judge.

The superintendent of Fulton State Hospital initiated the proceedings which are now before this court by filing an application with the Circuit Court of Greene Coun-

ty for the unconditional release of defendant Roy Edwin Davee pursuant to § 552.-040(4).[1]

In 1972 the trial court found defendant Roy Edwin Davee not guilty of murder in the first degree by reason of mental disease or defect excluding responsibility. The court committed Davee to the director of the division of mental diseases pursuant to § 552.040(1). Following the superintendent's application for Davee's release and after an evidentiary hearing, the trial court denied the request for Davee's release.

Davee contends that the trial court erred in its finding that he failed to meet the burden of proof required to gain release pursuant to § 552.040(1). He further contends that denial of the application for his release is in violation of the fifth, eighth and fourteenth amendments of the Constitution of the United States in that his confinement deprives him of the equal protection of the law and of due process of law and, further, subjects him to cruel and unusual punishment.

The incident which resulted in criminal charges being brought against Davee and his commitment was the killing of a woman with whom Davee was acquainted and who had refused to date Davee because she had become engaged to another man. Davee confessed to the killing and stated that he killed the woman because she rejected him for another.

Davee's prior history includes reported fantasies of raping and killing women, statements that he had no control over his movements, and a belief that people talked about him. Prior to the incident which resulted in his commitment, Davee had received psychiatric care at a United States Naval Hospital following three suicide attempts in one day. He was discharged from the Navy in 1970 due to unsuitability. Davee's history includes juvenile delinquency, alcohol and drug abuse.

Following Davee's commitment, he was first confined to the maximum security unit. His behavior initially included aggressive conduct which led to his confinement to his ward. Davee became aggressive toward a therapist who conducted group therapy in which he participated and was involved in other incidents of displayed explosive personality.

In late 1973, Davee's behavior improved and, according to hospital reports, no further incidents of aggressive behavior have occurred. He was transferred to the rehabilitation unit in the hospital in 1975. Approximately one month later, the superintendent applied for Davee's unconditional release by means of an affidavit stating, inter alia: "2. That said patient does not have, and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to himself or others or rendering him unable to conform his conduct to the requirements of the law."

Following hearing on the application for Davee's release, the trial court concluded that the evidence adduced failed to show that the defendant meets the criteria for release specified in § 552.040(1)[2] and denied the application.

■ Before proceeding to the issues presented, it is appropriate to note that the appellant before this court is defendant Roy Edwin Davee, notwithstanding that the applicant for Davee's release is the superintendent of Fulton State Hospital, the hospital where Davee is committed. Although Davee was not the moving party before the trial court, he is an "aggrieved party" for purposes of appeal from the denial of the application and is a proper party to appeal that judgment. See *State v. Montague*, 510 S.W.2d 776, 777[1] (Mo.App.1974).

■ Defendant's first contention is that the trial court erred in ruling that the

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

2. The applicable part of § 552.040(1) provides: "No person shall be released from such commitment until it is determined through the procedures provided in this section that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law."

burden of proof required by § 552.040(1) for his release was not met.

The burden of establishing facts to support release is upon the applicant for release. Likewise, the trial court may properly require more evidence than psychiatric opinion before concluding that an application for release from a state mental hospital should be granted. *Montague* at 778[4] and 780[5].

Davee was acquitted of criminal conduct because of a mental illness which he suffered. He was charged with the criminal offense of murder in the first degree. He initiated an affirmative defense of mental disease or defect excluding responsibility, and he was acquitted of the criminal act by reason of mental disease or defect excluding responsibility. This resulted in a criminal commitment of Davee to the director of the division of mental diseases for custody, care and treatment in a state mental hospital pursuant to §§ 552.030 and 552.040. See *State v. Kee*, 510 S.W.2d 477, 480 (Mo. banc 1974).

Davee's conduct which led to the murder charges against him was not condoned through the criminal commitment proceedings. Rather, because he suffered from a mental disease or defect excluding responsibility, Davee was acquitted but committed to the division of mental diseases.

The fact that Davee was not accountable for his conduct because he suffered from a mental condition does not prevent him from being a danger to society. He is placed in a special class of persons whose danger to society has been established by existing facts albeit that, due to his mental condition when the conduct leading to criminal charges occurred, he is not subjected to criminal punishment.

The purpose of a criminal commitment is to assure that conduct which has harmed one or more persons not again be permitted to constitute a threat of danger. One who has undergone a criminal commitment cannot be released from that commitment unless a court finds that he "does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law." § 552.040.

The trial court did not so find. We agree for the reasons hereafter stated.

At the evidentiary hearing, Davee was represented by counsel. The only testimony was that of Dr. Tellez, a psychiatrist employed by the division of mental diseases, and that of Dr. Han Hulstra, a psychiatrist who, at the request of the State, had examined Davee.

Dr. Tellez testified that he is the director of the rehabilitation unit at Fulton State Hospital and that he had been Davee's physician since Davee was transferred to the rehabilitation unit in 1975.

Dr. Tellez stated that he was aware of Davee's history of behavioral problems both in Davee's civilian life and while in the Navy. He was further familiar with Davee's history as a patient at Fulton State Hospital, including Davee's aggressiveness toward his group therapist prior to Davee's placement in the rehabilitation unit.

Dr. Tellez gave the opinion that what caused Davee to kill the young woman was conditions of schizophrenia, depression and a feeling of rejection. (Davee had confessed at the scene of the killing and stated he killed the victim because she refused to date him and had become engaged to another man). Dr. Tellez concluded that Davee was in need of no more psychiatric treatment.

It was the further opinion of Dr. Tellez that Davee no longer has psychotic symptoms, that Davee's "explosive personality" was controlled, that Davee's mental problems are now under control, and that Davee could now deal with problems of everyday life. However, Dr. Tellez also testified on cross-examination that some statistics show a fifteen percent chance of recurrence of mental problems in patients who have had psychotic symptoms such as Davee previously displayed. Dr. Tellez further testified that the probability of future aggressive behavior was greater for Davee than for a person who had no history of the type of mental problems Davee has experienced.

Dr. Tellez's testimony consisted of his conclusions as a psychiatrist. His testimony was devoid of objective facts, test results, detailed observations or examinations from which his conclusions could be evaluated.

Dr. Tellez testified that Davee's social contacts with females had been limited. No evidence was presented that Davee had developed open social contacts with females of that type which could be expected in an uncontrolled environment. Dr. Tellez knew of no instances during Davee's commitment when Davee had been exposed to rejection by either a male or female.

Dr. Tellez's conclusion was that Davee has reached maximum benefit of hospitalization and that Davee does not need any active treatment for mental illness. He concluded: "All of his personality difficulties have been corrected the best we could, and there is no evidence that he will act out under that influence in the reasonable future."

Dr. Hulstra testified that he had examined Davee and that he found Davee to not presently be suffering from an overt psychosis. However, Dr. Hulstra stated that he could not give an opinion as to the possibility of a relapse in the future. Dr. Hulstra further testified that the characteristics such as schizophrenia and depression previously evidenced by Davee could not be removed from his personality, only controlled. Dr. Hulstra's opinion was that Davee demonstrated no evidence of psychosis when examined but that whatever caused his aggressive acts in the past could recur.

We believe the decision reached by the trial court not to be in error. The evidence is not sufficient to justify a conclusion by us that the burden of proof was met.[3]

■ Defendant's second point asserts that his continued confinement in the state mental hospital violates his equal protection and due process rights under the fourteenth amendment of the Constitution of the United States, and also subjects him to cruel and unusual punishment prohibited by the eighth amendment because he can gain no further benefit from additional treatment.

We do not agree with this assertion.

Release under § 552.040 depends solely upon the patient's mental condition and potential dangerousness. Assuming, arguendo, that Davee can gain no further benefit from treatment, absent a determination that he is (1) free from mental disease, and (2) no longer dangerous to himself or others, his release is not authorized.[4]

*State v. Pertuisot*, 547 S.W.2d 192 (Mo. App.1977), held the fact that a patient can gain no further benefit from treatment as insufficient grounds for release.

A primary purpose of a criminal commitment is to afford society protection from a threat of danger. A patient so committed is afforded the opportunity to petition a court for his release at prescribed intervals

**3.** As was pointed out in *State v. Montague*, 510 S.W.2d 776, 779–780 (Mo.App.1974), the trial court, not the treating physicians, is vested with the ultimate decision as to whether evidence presented at a duly constituted hearing establishes that the conditions for release, as prescribed by § 552.040, have been met. Prior to enactment of that statute in 1963, authorities of the institution wherein a person acquitted of a crime on the ground of insanity was committed had power to discharge him without order of a court. See § 546.510 RSMo 1949, V.A. M.S., and *Richey v. Baur*, 298 S.W.2d 445 (Mo. banc 1957).

**4.** Sec. 552.040(1) commits a defendant in a criminal case who is acquitted on the ground of mental disease and defect to the division of mental diseases. A person committed in this manner may not be released until the proce-dures for his relief, as specified in § 552.040, are met. The decision as to the type of treatment to be afforded such a person must be made by the mental health personnel. If circumstances exist whereby traditional treatment methods are unnecessary for a particular patient, although that patient does not qualify for release, it may befall the division of mental health to establish treatment programs of a less traditional nature. A treatment program of containment and observation may be required for a particular patient even though traditional medication or therapy is no longer necessary for him. The duty of meeting the needs of one committed pursuant to § 552.040 lies with the division of mental diseases notwithstanding that its personnel may conclude that traditional treatment programs of medication and therapy are unnecessary for that patient.

during his commitment.[5] Under these circumstances, such a patient is not deprived of due process of law nor of its equal protection.

In *State v. James*, 534 S.W.2d 41 (Mo. 1976), our state supreme court reviewed criminal commitments pursuant to the Missouri Criminal Sexual Psychopath Act.[6] There, an equal protection challenge to that act was rejected, the court stating at page 44 of its opinion, " '[t]here can be little doubt that in the exercise of its police power a State may confine individuals solely to protect society from the dangers of significant antisocial acts * * *.' " This language is applicable to the instant case.[7]

As authority for his second point, Davee relies on *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), in his argument that § 552.040 denies him equal protection. That case dealt with an Indiana statute which provided for an accused's indefinite commitment upon a finding that the accused was incompetent to stand trial. The court found the Indiana law denied equal protection because it applied more lenient commitment standards and more stringent release standards to such an accused than those standards generally applied to persons not charged with crimes. In *Jackson* the court further ruled that due process requires that a person committed solely for incompetency to stand trial can be held only a reasonable time to determine whether a substantial probability exists that he will attain competency in the future. If no such probability exists, a civil commitment proceeding is required to be initiated or the person released.

Davee was not adjudged incompetent to stand trial. Rather, Davee was tried and acquitted on the specific ground of mental

disease or defect excluding responsibility. *Jackson* does not apply to the special class of persons in which Davee is placed, that special class being those who have committed antisocial acts from which society is entitled to be protected.

The judgment is affirmed.

All of the Judges concur.

---

5. Sec. 552.040(4) provides, in part: "The committed person or the superintendent of a hospital where the person is committed may file an application in the court where the person was tried, seeking an order releasing him conditionally or unconditionally. . . . Any order denying the application shall be without prejudice to the filing of another application after one hundred eighty days from the denial of the prior application."

6. See §§ 202.730 and 202.740.

7. Aspects other than release procedures of § 552.040 have been considered and upheld as to due process and equal protection considerations in *State v. Kee*, 510 S.W.2d 477 (Mo. banc 1974) and *State v. Kent*, 515 S.W.2d 457 (Mo. banc 1974). The adequacy of the release provisions of § 552.040 was partially relied upon by the court in *State v. Kee*, supra, in reaching its decision. 510 S.W.2d at 483–484.