**STATE of Missouri, Respondent,**

v.

**Norman Wray TERRY, Appellant.**

**No. WD 35603.**

Missouri Court of Appeals,
Western District.

Dec. 18, 1984.

Chris Hoberock, Nevada, for appellant.

John Ashcroft, Atty. Gen., and Mary Patrick Seigfreid, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

PER CURIAM:

In 1979 Norman Terry was charged in Henry County with the second-degree murder of his ex-wife. By order of December 14, 1979, the trial court found Terry not guilty by reason of mental disease or defect excluding responsibility and ordered that he be committed to the Missouri Department of Mental Health for custody, care and treatment in a state mental hospital, § 552.040.1, RSMo 1978.

On May 10, 1983, Terry filed an application for release from custody, § 552.040, RSMo Supp.1982. The prosecuting attorney of Henry County filed an objection to the defendant's release. After a hearing on November 16, 1983, Judge Robert L. Koffman concluded that defendant failed to meet the criteria for release and denied the application.[1] From denial of that application, defendant appeals, arguing that the trial court's decision to deny his application for release was against the weight of the evidence.

We affirm the judgment.

On review, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it erroneously declares or applies the law, or unless it is against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A judgment is set aside as being against the weight of the evidence upon "a firm belief that the decree or judgment is wrong." *Id.*

Defendant presented his testimony and that of five other witnesses on his behalf. The state offered no evidence.

1. The statute in question, Section 552.040.1, reads in pertinent part:

    No person shall be released from such commitment until it is determined through the procedures provided in this section that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law.

Dr. William Clary, a Springfield psychiatrist in private practice, testified that he first examined defendant in August, 1979, and that at his request a psychologist tested defendant. They found him to be a chronically ill mental patient, a schizophrenic, currently in need of hospitalization and treatment.

In September, 1981, after defendant's second examination by Dr. Clary and tests by a psychologist, Dr. Clary noted vast improvement with some slight inward turning tendencies remaining. He concluded defendant's schizophrenia was in remission.

In July, 1983, Dr. Clary examined defendant and a clinical psychologist conducted a battery of psychological tests on defendant once again. Dr. Clary noted considerable improvement with no evidence of psychosis and no evidence of psychological disorder except for "the remorse about his rather tragic set of past circumstances." His conclusion: This was a somewhat unusual case of "spontaneous remission." He also stated not enough long range studies of spontaneous remission have been done.

He recommended a conditional release for defendant rather than an unconditional one because, he said, "Everybody would feel a little less uneasy if he were required to check in every now and then," and "you ought to do everything possible to protect society."

He stated that he knew that institutional psychiatrists in general felt schizophrenics "never get over it."

In response to the court's question "[c]ould his problems originally have resulted from a physiological problem?", Dr. Clary answered:

It's hard to say .... what the current thinking is, Judge, on schizophrenia is that you have to have two switches both in the on position, to get the actual disease. You have to have an hereditary predisposition to the illness .... you have to have the make up of your brain or your chemistry, and then you have to have sufficient stress in your upbringing and/or in later events to throw that switch two into operation and cause the actual disease.

We note that Dr. Clary stated he did not at any time perform a positron emission tomograph, that is, a "PET scanner" test, of defendant's brain, a laboratory test which shows actual changes in the brain. The record is unclear whether he omitted to perform this test because of his possible lack of access to the technology involved or, because, based on his diagnosis of defendant's specific type of schizophrenia, he thought he would find nothing abnormal.

Dr. Ernest Anderson, D.O., is an institutional psychiatrist at Nevada State Hospital in charge of the ward to which defendant was assigned at the time of the hearing. He testified that his first contact with the defendant was February or March, 1983, some eight or nine months before the hearing. At no time did Dr. Anderson find any symptoms in defendant of psychosis or of paranoid or other schizophrenia. Dr. Anderson believes defendant's case is in remission. Three electroencephalograms (EEG) on defendant have indicated no motor damage, but no other formal testing of defendant had occurred at Nevada State Hospital—no psychological testing, no stress testing. When asked whether he thought that defendant "would be a threat to anybody if released either conditionally or unconditionally," Dr. Anderson answered, "I really don't see any evidence that he would. There, again, you never know when mental illness is going to strike anyone."

The court directed several questions to Dr. Anderson on the spontaneous remission theory, and, in answer to the court's question, "Is spontaneous remission of schizophrenia generally accepted by most of the people in those [psychiatric and medical] fields?", Dr. Anderson stated, "By most? I don't really think so."

Arlene Pierson, R.N., and Sally Bachtal, L.P.N., workers in defendant's ward at Nevada State Hospital, the former on day shift and the latter on afternoon shift, both testified that defendant was cooperative. Wanda Finney, a Nevada State Hospital

music therapist, testified she is taking guitar lessons from defendant. The defendant then took the stand and described his life and routine at the hospital, and his plans for the future if released.

 The burden is upon the applicant to establish facts to support his release. *State v. Montague,* 510 S.W.2d 776, 778 (Mo.1974). Keeping in mind that "[t]he purpose of a criminal commitment is to assure that conduct which has harmed one or more persons not again be permitted to constitute a threat of danger," *State v. Davee,* 558 S.W.2d 335, 338 (Mo.App.1977), we reiterate that the ultimate decision on release lies with the trial court, and it is he who must be convinced that the statutory requirements have been met for an application for release to be granted. *State v. Montague,* 510 S.W.2d at 779–80.

We recognize there is evidence from which the trial court could have granted defendant's application for release. He did not do so. Upon review of the evidence presented, we do not hold "a firm belief that the decree or judgment is wrong," *Murphy v. Carron,* 536 S.W.2d at 32. Dr. Clary diagnosed defendant's schizophrenia as being in remission; that the case was one of "spontaneous remission." He stated that not enough long range studies of spontaneous remission of schizophrenia have been done. Dr. Anderson testified that the spontaneous remission theory is not generally accepted in the psychiatric and medical fields. There were tests available to defendant and to his physicians which had not been administered. Defendant's position implicitly is that in the absence of contradiction or impeachment of his evidence, the trial court was obliged to accept it. The trial court was under no such duty, but was required to evaluate the evidence for its convincing quality. *J.L.P. v. D.J.P.,* 643 S.W.2d 865 (Mo.App.1982). The testimony did not convince the trial court of the defendant's present freedom from mental disease or defect, and of his freedom from the likelihood of such disease or defect within the reasonable future, which would pose the kind of threats described in Sec. 552.040.1, *supra.* Under the principles of appellate review which we follow, *Murphy v. Carron, supra,* we cannot reverse the trial court judgment upon this record.

The judgment is affirmed.