

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| STATE OF MISSOURI, ex rel. CHRIS KOSTER, | WD79277 |
| Relator, | OPINION FILED: March 15, 2016 |
| v. | |
| THE HONORABLE GARY OXENHANDLER, Circuit Judge of Callaway County, and | |
| JUDY GRONER, Circuit Clerk Callaway County Circuit Court, | |
| Respondents. | |

## ORIGINAL PROCEEDING IN CERTIORARI

Before Writ Division:  Gary D. Witt, Presiding Judge, Thomas H. Newton, Judge and Cynthia L. Martin, Judge

This is an original proceeding in certiorari to review the grant of a writ of habeas corpus to habeas petitioner Shanon Swickheimer ("Swickheimer") by the Callaway County Circuit Court ("habeas court").  Swickheimer was committed to the custody of the Department of Mental Health by an order of commitment issued on July 9, 2007 by the Polk County Circuit Court ("underlying trial court") following a plea of not guilty by

reason of insanity ("NGRI") to the class A felony of Assault 1st Degree--Serious Physical Injury (the "underlying charge"). The writ of habeas corpus set aside Swickheimer's NGRI plea, and ordered his delivery into the custody of the Sheriff of Polk County, Missouri to be held pending further proceedings to address the underlying charge.

The habeas court's record granting the writ of habeas corpus is not quashed in part, and is quashed in part.

## Factual and Procedural History

Swickheimer was charged by felony complaint on January 25, 2004 with the class A felony of Assault 1st Degree--Serious Physical Injury pursuant to section 565.050.[1] The complaint alleged that on January 24, 2004, Swickheimer "knowingly caused serious physical injury to [M.J.] by shooting her in the chest with a pellet rifle." The facts forming the basis for the complaint were set forth in an attached probable cause statement. Those facts included the allegation that Swickheimer shot himself in the mouth and chest with the same pellet rifle. M.J. survived her injuries.

Swickheimer appeared for a preliminary hearing on March 15, 2004. The docket sheet indicates that "[b]ased on [Swickheimer's] appearance and demeanor in court the court finds reasonable cause to believe that the defendant lacks mental fitness to proceed, and upon its own motion pursuant to [section] 552.020 RSMo,[2] over the objection of defendant and his counsel, orders that that [sic] defendant be mentally examined as per

_____

[1] All statutory references relating to criminal charges refer to the version of the statute in effect at the time of the charge.

[2] All statutory references to provisions of Chapter 552 are to the version of the referenced statute in effect prior to amendment in 2011. The 2011 amendments to Chapter 552 do not alter the analysis in our Opinion, as the amendments involved only the replacement of insensitive language.

order filed."[3]  As a result, no preliminary hearing was conducted, and Swickheimer was not bound over or ordered to appear and answer to the charge.  *See* Rule 22.09.

Following evaluation, Western Missouri Mental Health Center prepared a report dated April 15, 2004, expressing the opinion that Swickheimer "suffers from mental disease or defect, in the form of Psychotic Disorder, Not otherwise Specified and that, as a result of mental disease or defect he lacks capacity to understand the proceedings against him and to assist in his own defense."  On May 3, 2004, the underlying trial court entered an order committing Swickheimer to the Department of Mental Health due to incompetency to proceed and for "competency training."

On January 20, 2005, a 180-day evaluation report[4] was submitted by Fulton State Hospital.  The report concluded that Swickheimer "currently possesses the capacity to understand the charges[5] and proceedings against him, and can assist his attorney in her [sic] own defense."  Notwithstanding, the underlying trial court concluded on April 29,

---

[3]Section 552.020.1 provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."  Section 552.020.2 provides that whenever a judge "has reasonable cause to believe that the accused lacks mental fitness to proceed, he shall, upon his own motion" appoint a qualified evaluator to prepare a report making detailed statutory findings with respect to whether the accused "as a result of a mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his defense."  Section 552.020.3(3).

The capacity to proceed--that is to understand the proceedings and to assist in one's defense--is to be distinguished from the NGRI defense where an accused is not responsible for a crime because, at the time of the criminal conduct, the accused suffered from a mental disease or defect rendering him incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct.  *See* section 552.030.1.

[4]Section 552.020.11(1) requires regular competency to proceed reports every six months once an accused has been committed to the Department of Mental Health based on a determination that the accused is not competent to proceed.

[5]Swickheimer had been charged with the class C felony of Abuse of a Child and was in custody on that charge when a warrant was issued in connection with the Assault 1st Degree charge.  The charges arise out of different incidents.  The Abuse of a Child charge was assigned Case No. 04CR692013 (and then 04CR692013-01 following preliminary hearing).  The Assault 1st Degree charge was assigned Case No. 04CR692319 (and then 04CR692319-01 following preliminary hearing).  Swickheimer's competency to proceed was being evaluated in both cases and the docket sheet entries in both cases are nearly identical.  The separate cases were effectively being managed as a single case by the underlying trial court, though never formally consolidated.

2005, that Swickheimer "continue[d] to lack the mental fitness to proceed," and ordered Swickheimer's commitment to continue.

A December 7, 2005 follow up evaluation[6] prepared by Dr. Jeffrey S. Kline, a different examiner at Fulton State Hospital, concluded that Swickheimer had the capacity to understand the proceedings against him and the nature of the judicial process, but was unable to assist his attorney in his own defense. The underlying trial court ordered Swickheimer's commitment to continue.

A June 8, 2006 follow up evaluation prepared by Dr. Kline concluded that Swickheimer was now competent to proceed, both because he understood the proceedings and because he could assist in his defense.

On June 15, 2007, more than a year later, the underlying trial court found Swickheimer competent to proceed and to assist in his own defense. The underlying trial court proceeded with a preliminary hearing, finding that there was probable cause to bind Swickheimer over for trial. Swickheimer was ordered to appear and answer to the charge on July 9, 2007. *See* Rule 22.09(b), (c).

Prior to the June 15, 2007 competency determination and preliminary hearing, Fulton State Hospital separately evaluated Swickheimer to address whether Swickheimer lacked criminal responsibility for his crime due to mental disease or defect pursuant to section 552.030.1, the NGRI defense. The criminal responsibility evaluation was also conducted by Dr. Kline.

---

[6]This competency report was submitted more than 180 days after the January 20, 2005 competency report, in violation of section 552.011(1). The underlying trial court issued a show cause order to precipitate preparation of the delinquent report.

4

Dr. Kline's criminal responsibility report, dated April 9, 2007,[7] summarized accounts of Swickheimer's conduct on the day M.J. was shot.[8] The report concluded that as a result of Swickheimer's disease (Schizoaffective Disorder, Bipolar Type) Swickheimer "was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct or [of] conforming his conduct to the requirements of the law" at the time M.J. was shot.

As had been scheduled during the June 15, 2007 preliminary hearing, Swickheimer appeared in court on July 9, 2007 to answer to the Assault 1st Degree charge. A hand written bench note indicates that on that same date, the State filed an Information[9] charging Swickheimer with the class A felony of Assault 1st Degree in violation of section 565.050 by "knowingly caus[ing] serious physical injury to [M.J.] by shooting her in the chest with a pellet rifle.[10] The bench note observed that the State appeared through counsel, and that Swickheimer appeared personally and with counsel. The bench note observed that Swickheimer was arraigned "per attached sheet," in apparent reference to an "Arraignment" form which confirmed the parties' appearances, which noted Swickheimer's waiver of formal arraignment and reading of the Information,

---

[7]The caption of the April 9, 2007 responsibility report states that it was prepared in Case No. 04CR692013, Swickheimer's Abuse of a Child case. However, although the report briefly summarizes the charges Swickheimer was facing in **both** of his pending criminal cases, the report discusses **only** the specific circumstances giving rise to the Assault 1st Degree charge, Case No. 04CR692319.

[8]We purposefully provide no details regarding Swickheimer's reported criminal conduct as reflected in the April 9, 2007 criminal responsibility report. Sections 552.020.6, 552.020.13, and 552.030.3 provide that Chapter 552 reports shall not be public records or open to the public. We have limited our references to the content of Swickheimer's Chapter 552 reports to those necessary to address the issues presented in this writ of certiorari.

[9]Inexplicably, the Information bears a file stamp of "July 9, *2000* at 12:59."

[10]Rule 23.03 provides that "[a]n information charging a felony shall be filed not later than ten days after the date of the order requiring the defendant to answer to the charge. The court having jurisdiction of the offense may extend the time for good cause shown." The State's Information thus should have been filed no later than June 25, 2007, ten days after the June 15, 2007 preliminary hearing.

5

which noted Swickheimer's entry of a plea of NGRI, and which ordered Swickheimer to appear for trial on August 13, 2007.[11] The bench note then recited that following arraignment, Swickheimer filed a Notice of Intent to Rely on Defense of Mental Disease or Defect, and a separate Notice of Exclusivity of Defense of Mental Disease of Defect. Finally, the bench note indicated that the State accepted the NGRI plea, and that an order and judgment committing Swickheimer to the Department of Mental Health was executed and filed.

The July 9, 2007 order and judgment:[12] (i) found that Swickheimer filed a written notice that he had no defense to the underlying charge other than the defense of NGRI; (ii) found that the State accepted Swickheimer's NGRI defense "pursuant to section 552.030.2"; (iii) found that a report of mental evaluation dated April 9, 2007 was

---

[11]The Arraignment form is available for confidential review on Case.net, although associated with a July 9, 2007 docket sheet entry that reads "Def Not Competent to Proceed." Swickheimer complains that he never contemporaneously received the Arraignment form. However, we perceive no legal basis that would permit this fact, if true, to support habeas relief.

Swickheimer also argues that his NGRI defense could not have been accepted by the underlying trial court as a matter of law in light of the "Def Not Competent to Proceed" docket entry. We agree that a NGRI defense cannot proceed so long as pursuant to section 552.020.1, the accused is not competent to proceed and to assist in his defense. *Compare* section 552.020.1 with section 552.030.1; *see State v. Grantham*, 519 S.W.2d 19, 20 n.1 (Mo. banc 1975) (noting in discussing whether State properly accepted accused's NGRI plea that the accused had been determined competent to proceed pursuant to section 552.020.1); *Ex Parte Kent*, 490 S.W.2d 649, 651 (Mo banc 1973) (holding that accused who was not competent to proceed could not be committed based on acceptance of a NGRI plea, and that matter should be remanded for proceedings until such time as accused became competent to proceed). However, we conclude that the July 9, 2007 docket entry "Def Not Competent to Proceed" is simply a clerical mistake. When the referenced confidential link is accessed, the Arraignment form is revealed. There is no bench note, order, or judgment signed by a judge on July 9, 2007 finding Swickheimer not competent to proceed. To the contrary, Swickheimer had been determined competent to proceed during a hearing conducted on June 15, 2007.

[12]The July 9, 2007 order and judgment has "Cause No. 04CR692013-01" typed in the caption, the case number for Swickheimer's Abuse of a Child charge. The typed case number is modified by handwritten interlineation to "04CR692319-01," the case number for Swickheimer's Assault 1st Degree charge. It is not clear when this handwritten modification to the order and judgment was made, or by whom. However, no one contests that it was the Assault 1st Degree charge in Case No. 04CR692319-01 that was disposed of by acquittal attendant to acceptance of Swickheimer's NGRI defense. The docket sheet in Case No. 04CR692013-01 (the Abuse of a Child case) indicates that the State dismissed that charge by oral motion on July 9, 2007--the same date Swickheimer entered, and the State accepted, the now contested NGRI plea in Case No. 04CR692319-01 (the Assault 1st Degree case).

received in evidence; (iv) concluded that the April 9, 2007 report found Swickheimer to "be suffering from mental disease or defect excluding responsibility;" and (v) found that Swickheimer was suffering from a mental disease or defect excluding responsibility. The order concluded that Swickheimer was not guilty under section 552.030,[13] and "committed [Swickheimer] to the custody of the director of the Department of Mental Health for care and treatment for so long as the law provides, pursuant to section 552.040 RSMo."

In October 2007, Swickheimer filed a *pro se* motion in the underlying trial court seeking conditional release from his commitment. The motion asked the court to "order an independent mental examination" to determine Swickheimer's right to release pursuant to section 552.040.[14] The motion was denied on November 29, 2007.

On April 12, 2010, Swickheimer filed a second petition for conditional release pursuant to section 552.040.[15] Following a bench trial, the underlying trial court denied Swickheimer's motion on June 2, 2011.

On July 6, 2011, Swickheimer escaped from a psychiatric facility in St. Louis. He was taken back into custody 43 days later, on August 19, 2011. Swickheimer was

---

[13]Swickheimer complains that the July 9, 2007 order and judgment failed to identify the specific charge of which Swickheimer was acquitted upon acceptance of the NGRI defense. Section 552.030.7 does require the judgment or verdict acquitting an accused on the ground of NGRI to "state the offense for which the accused was acquitted." Whatever the legislative intent for this requirement, which may well have been to facilitate accurate record keeping, Swickheimer has suffered no legal prejudice. The only charges pending against him on July 9, 2007 were the Abuse of a Child charge in 04CR692013-01 and the Assault 1st Degree charge in 04CR692319-01. The Abuse of a Child charge was dismissed by the State's oral motion on July 9, 2007. The only charge that could have been the subject of the July 9, 2007 order and judgment was the Assault 1st Degree charge.

[14]Section 552.040 addresses an accused's ability to seek conditional or unconditional release from commitment following acquittal on the grounds of NGRI.

[15]The petition alleged that Swickheimer pled NGRI to a charge of Assault 1st Degree *and* to a charge of armed criminal action. Swickheimer was never charged with armed criminal action either at the time of the January 25, 2004 felony complaint (though the associated probable cause statement suggested there would have been probable cause to do so), or at the time of the July 9, 2007 Information.

charged with escape from a State mental hospital, a class D felony pursuant to section 575.195. He pled guilty on April 19, 2012 and was sentenced to serve four years in the Department of Corrections.

On February 20, 2013, while he was incarcerated on the escape charge, Swickheimer filed a petition for writ of habeas corpus in the Circuit Court of St. Louis County. The petition claimed that Swickheimer's NGRI plea was constitutionally deficient for several enumerated reasons. The St. Louis County habeas court denied Swickheimer's claims on their merits.

In April, 2014, Swickheimer was released from the Department of Corrections, and returned to Fulton State Hospital. On April 29, 2014, Swickheimer filed a second petition for writ of habeas corpus in the Callaway County Circuit Court.[16] The petition alleged that Swickheimer's NGRI plea was constitutionally defective because it was accepted: (i) in the absence of disclosure of the collateral consequences of the plea; (ii) under circumstances where Swickheimer expected to appear on July 9, 2007 to enter a criminal plea; (iii) under circumstances where Swickheimer had indicated that he had the defense of accidental shooting to the underlying charge of Assault 1st Degree; and (iv) without Swickheimer personally having verified that he had no other defense by signing

_____

[16]In the habeas proceedings below, the State argued that Swickheimer's second petition for writ of habeas corpus was precluded by Rule 91 because similar assertions were denied on the merits by the St. Louis County Circuit Court. Rule 91 contains no such prohibition. Rule 91.02(a) requires a petition for writ of habeas corpus to be presented in the first instance to the "circuit or associate circuit judge for the county in which the person is held in custody." Rule 91.04(a)(4) requires a petition for writ of habeas corpus to state "[t]hat no petition for relief sought has been made *to any higher court* to the one to which the petition is presented *or that the higher court denied the writ without prejudice to proceeding in a lower court*." (Emphasis added.) Rule 91 does not expressly prohibit the filing of successive habeas petitions in lower courts. *See Ferguson v. Dormire*, 413 S.W.3d 40, 52 (Mo. App. W.D. 2013) (addressing, generally, that successive habeas petitions are not barred except as proscribed by Rule 91).

the notice of exclusivity of defense, or by an on-the-record inquiry to confirm that he had no other defense and was knowingly and voluntarily entering a NGRI defense.

The habeas court issued an order to show cause why a writ of habeas corpus should not issue. Testimony from Swickheimer, testimony from the attorney who appeared with Swickheimer on July 9, 2007, and various documents were received into evidence.

Summarized, Swickheimer testified that after he was found competent to proceed during the June 15, 2007 hearing, he was released from confinement at Fulton State Hospital and returned to the Polk County Jail to await the July 9, 2007 court appearance; that he had no discussions with his trial counsel between that date and the July 9, 2007 trial date; that he appeared before the underlying trial court on July 9, 2007 believing that either a traditional plea to the criminal charge could be negotiated, or that he would be going to trial; that trial counsel told him no plea could be negotiated and told him his only options were to claim permanent incompetence or to enter a NGRI defense; that trial counsel told him that with an NGRI defense, he could likely work himself out of the system in 6 months, though Swickheimer did not believe that would be the case; that Swickheimer became frustrated and hollered out to the trial judge that he wanted a trial; that the trial judge held out his left hand and told the court reporter to go off the record, and then told Swickheimer "it seems to me you haven't learned a damn thing in three years;" that the trial judge ordered the bailiff to remove Swickheimer from the courtroom, and he was taken to a bench in the hallway; that he was later returned to the Polk County jail; that he learned on July 17, 2007 from his trial counsel that the NGRI defense had

9

been entered on his behalf; that he was returned to Fulton State Hospital on July 17, 2007; that he had never authorized the entry of a NGRI defense on his behalf; that he had consistently advised mental health evaluators he was not interested in pleading NGRI and was aware that doing so could subject him to an indefinite confinement in a mental health facility; and that he had always advised his attorney and mental health examiners that he had a defense to the charge of Assault 1st Degree because MJ was shot accidentally when she grabbed for the pellet rifle to prevent Swickheimer from shooting himself. On cross-examination, Swickheimer confirmed that he had wanted to go to trial on July 9, 2007, that he did not want to enter a NGRI plea, and that M.J. was shot by accident.

The attorney who appeared with Swickheimer on July 9, 2007, testified on behalf of the State. Trial counsel recalled that he took over representation of Swickheimer from a different public defender sometime between January and August 2006, and likely in May when the first attorney left the public defender's office; that he had no specific recollection of his appearance with Swickheimer on June 15, 2007 for a preliminary hearing; that he had no specific recollection of the proceedings in Swickheimer's case on July 9, 2007; that he did remember the case was disposed of by an accepted NGRI plea, which he characterized as an unusual plea; that he had no memory of the proceedings that day but believes he would have remembered had there been an on-the-record hearing; that it is his best recollection by looking at notes in his file that it was a simple paperwork plea where the NGRI plea was entered and accepted on the same day; that his notes reflect a visit with Swickheimer at the Polk County Jail on June 29, 2007 "regarding case and NGRI plea," but that he has no memory of the particulars of the discussion; and that

10

although he has no independent recollection of the proceedings leading up to the NGRI plea, he does not believe he would have entered the plea without Swickheimer's consent. On cross-examination, trial counsel advised that "it wouldn't surprise me if [the appearance on July 9, 2007] wasn't a whole lot more than us just simply providing the judge the forms and the judge signing them. That wouldn't surprise me in a situation like this, but I don't have any independent recollection as to exactly what transpired on July 9, 2007."[17] When asked by the habeas court, trial counsel equated a NGRI plea with a felony guilty plea in significance as "both will likely involve a period of time in confinement of some nature." When asked by the habeas court whether it struck him as unusual that a NGRI plea would be taken without a record, trial counsel responded that "[i]t does in a sense when you think about what could happen to the--to the Defendant in terms of, you know, being incarcerated to some degree in a state hospital, and it is--it is an incarceration to some degree. Certainly we would all agree to that."

After considering the evidence, the habeas court issued its order and judgment on December 11, 2015 granting the writ of habeas corpus. The habeas court found that no meaningful record existed of Swickheimer's NGRI plea. The habeas court noted that because no meaningful record existed, Swickheimer's "testimony as to what occurred on July 9, 2007, is unchallenged." The habeas court criticized the lack of a movant signed notice of exclusivity of defense; unspecified "intentional off-the-record events" in the underlying trial court; and trial counsel's lack of recollection of Swickheimer's plea "in a

---

[17]The State does not contend that there was an on-the-record proceeding conducted at the time Swickheimer's NGRI defense was accepted.

11

case that is not particularly old and that involves an almost unforgettable set of alleged crime facts." The habeas court noted that the State challenged Swickheimer's credibility, but that his "purported lack of credibility is almost tangential to and is, in fact, overshadowed by the fact that no meaningful record exists of movant's NGRI plea." Relying on principles of due process, the habeas court analogized the importance of a meaningful record of acceptance of a NGRI plea with the importance of a record in accepting guilty pleas, and with the on-the-record requirements imposed to verify that an accused's written waiver of counsel is knowing and voluntary. The habeas court concluded that:

> As a result of whatever occurred at movant's appearance in the Circuit Court of Polk County, Missouri, on July 9, 2007, movant was committed to the Department of Mental Health for an indefinite period of time--maybe his entire life. Movant's due process rights were violated, a manifest injustice occurred and he is entitled to relief (Rule 29.07(d)).

The writ of habeas corpus ordered Swickheimer's NGRI plea set aside, and ordered that Swickheimer be delivered into the custody of the Sheriff of Polk County within ten days to be held pending further charges. The habeas court further ordered that should Swickheimer be subsequently prosecuted, convicted, and sentenced to the Department of Corrections, he "shall receive credit for all time held in jail prior to the hearing on July 9, 2007, for all time in the custody of the Department of Mental Health and for all time held in the Department of Corrections (predicated upon movant's 43 day escape conviction)."

Following issuance of the writ of habeas corpus, the Polk County Prosecuting Attorney filed an *ex parte* motion for mental evaluation in the underlying trial court on December 16, 2015 "to determine if [Swickheimer is] mentally competent to stand trial

12

and to assist in his own defense."[18] On December 17, 2015, the underlying trial court entered an order for mental examination "upon motion by the state," directing that Swickheimer remain in the custody of the Department of Mental Health for that purpose, whereupon he would then be delivered to the custody of the Polk County Sheriff. On December 22, 2015, Swickheimer's counsel filed a motion in the habeas court, characterizing as contemptuous the *ex parte* efforts to keep Swickheimer confined in the custody of the Department of Mental Health.

On December 24, 2015, the State filed a petition for writ of certiorari in this court seeking review of the habeas record. We issued a writ of certiorari on December 30, 2015.[19] On January 4, 2016, we issued our order staying all proceedings in the habeas court, and staying enforcement of the writ of habeas corpus, pending further order of this court. Swickheimer remains confined at the Fulton State Hospital in Callaway County.

### Standard of Review

Rule 91.01(b) provides that "[a]ny person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." *See also* section 532.010 (providing that "[e]very person committed, detained, confined or restrained of his liberty, within this state, for any criminal or supposed criminal matter, or under any pretense whatsoever, . . . may prosecute a writ of habeas corpus as herein

---

[18]The motion does not contain a certificate of service, and bears no indication that it was served on Swickheimer or his attorney.

[19]"'When the Attorney General seeks a writ of certiorari [following the grant of a habeas petition], the writ issues as a matter of course and of right. . . .'" *State ex rel. Nixon v. Kelly*, 58 S.W.3d 513, 516 (Mo. banc 2001) (quoting *State ex rel. Taylor v. Blair*, 210 S.W.2d 1, 3-4 (Mo. banc 1948)).

A writ of certiorari requires an inferior court to produce a certified record of a particular case for review for irregularities. BLACK'S LAW DICTIONARY 228 (6th ed. 1990). Our writ of certiorari thus ordered the Circuit Court of Callaway County to return the record of the habeas corpus proceedings to this court for review.

provided, to inquire into the cause of such confinement or restraint."). Consideration of a petition for writ of habeas corpus is "limited to determining the facial validity of confinement." *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624 (Mo. banc 2002). "Under the statutes that have codified the common law writ, the 'facial validity' of confinement is determined on the basis of the entire record of the proceeding in question." *State ex rel. Nixon v. Dierker*, 22 S.W.3d 787, 789 (Mo. App. E.D. 2000) (citing *Brown v. Gammon*, 947 S.W.2d 437, 440 (Mo. App. W.D. 1997)). The essential question to be determined is whether a review of the entire record establishes that a habeas petitioner is being deprived of his liberty without due process of law. *See Ex Parte Kent*, 490 S.W.2d 649, 650 (Mo. banc 1973).

"[A]n action in certiorari . . . seek[s] to quash" the habeas judgment. *State ex rel. White v. Swink*, 256 S.W.2d 825, 827 (Mo. App. St. L. Dist. 1953). Certiorari is thus "available to correct [habeas] judgments that are in excess or an abuse of jurisdiction, and that are not otherwise reviewable on appeal." *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 518 (Mo. banc 2001). However, our review is limited to a determination whether the habeas court exceeded the bounds of its jurisdiction. *Id.*; *see also State ex rel. Nixon v. Jaynes*, 61 S.W.3d 243, 245 (Mo. banc 2001) ("The chief purpose of certiorari is to confine an inferior court within its jurisdiction.").

"Missouri recognizes only two types of jurisdiction: personal and subject matter, both of which derive from constitutional principles relating to the circuit court's ability to exercise power over particular persons and categories of cases." *State ex rel. Koster v. Jackson*, 301 S.W.3d 586, 589 (Mo. App. W.D. 2010) (citing *J.C.W. ex rel. Webb v.*

*Wyciskalla*, 275 S.W.3d 249 (Mo. banc. 2009)). Here, there is no issue that the habeas court had personal and subject matter jurisdiction over Swickheimer's habeas petition.[20] As a result, post-*Webb*, we assess whether the habeas court exceeded its authority or abused its discretion in issuing the writ of habeas corpus.[21]

An abuse of discretion occurs only when a "ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Stewart*, 313 S.W.3d 661, 665 (Mo. banc 2010). "In accordance with general rules relating to presumptions in an appellate court, a court reviewing an order or judgment in a habeas proceeding will not presume error but in the absence of a contrary showing, will presume the order or judgment is correct; [and] that the rulings of the [habeas] court are correct." *State ex rel. Shartel v. Skinker*, 25 S.W.2d 472, 477 (Mo. banc 1930).

Our review in this regard is limited to questions of law presented by the record before the habeas court. *State ex rel. Nixon v. Sprick*, 59 S.W.3d 515, 518 (Mo. banc 2001). We do not review findings of fact. *Id.* However, the sufficiency of the evidence to support the writ of habeas corpus as a whole is a question of law subject to certiorari

---

[20]The Callaway County Circuit Court possessed personal jurisdiction over the habeas proceedings, as Swickheimer is in the State of Missouri, and is confined in Callaway County, Missouri. Rule 91.02(a). The Callaway County Circuit Court had subject matter jurisdiction over the habeas proceedings pursuant to Mo. Const. art. V, section 14(a), which affords circuit courts in Missouri non-exclusive original jurisdiction over remedial writs.

[21]There is no contention here that Swickheimer's habeas claims are procedurally defaulted, an issue that is common in habeas cases where claims arguably should have been pursued in post-conviction proceedings pursuant to Rules 24.035 and 29.15. However, Rules 24.035 and 29.15 apply only to felony convictions, and afford no recourse to challenge the acceptance of a NGRI defense which results in an acquittal. Habeas is thus the only viable means by which the lawfulness of confinement as a result of the NGRI defense can be challenged. *See State v. McKee*, 39 S.W.3d 565, 569, n.6 (Mo. App. S.D. 2001) (holding that "habeas corpus is available as a remedy for persons confined pursuant to Chapter 552 procedures if an application therefor is properly pleaded, filed in a court having jurisdiction, and facts are proven showing entitlement to relief"). There is no time constraint imposed on the filing of a writ of habeas corpus.

review. *Id*. We assume the habeas court made findings of fact warranted by the evidence sufficient to sustain the habeas judgment." *Skinker*, 25 S.W.2d at 478. "[E]very lawful intendment will be made in favor of the determination and the regularity of the [habeas] proceeding below." *Id.* Upon the completion of our review, our options are to "either quash the writ [of habeas corpus] or to uphold the actions of the habeas court," *Jackson*, 301 S.W.3d at 589, "in whole or in part."[22] *Swink*, 256 S.W.2d at 827.

**Analysis**

The State's petition for writ of certiorari contends that the habeas court exceeded its authority or abused its discretion in issuing the writ of habeas corpus because: "(1) the order purports to issue the writ of habeas corpus on an alleged due process violation that was not raised by the parties and did not actually occur; (2) the court issued its order after erroneously determining that the escape rule could not apply as a matter of law; and (3) the habeas court purports to give Swickheimer jail-time credit." [Sugg. in Support of Pet. for Writ of Cert., p. 1] We address these claims of error separately.

I.

***The Habeas Court's Reliance on Due Process Concerns to Issue the Writ of Habeas Corpus that were Either not Raised or that did not Actually Occur***

A.

We agree with the State that the habeas court relied on principles of due process to grant Swickheimer's habeas relief. However, we disagree with the State's assertion that

---

[22]"In certiorari, this Court is limited to either quashing or not quashing the record of the lower court." *State ex rel. Nixon v. Jaynes*, 61 S.W.3d 243, 246 n.1 (Mo. banc 2001). Thus, an appellate opinion quashing the record of a habeas court is not a denial of the writ by a higher court. *Id.* (citing Rule 91.04(a)(4); Rule 91.22; *In re Breck*, 158 S.W. 843, 849 (Mo. banc 1913)).

16

the habeas court did so "on a theory the court developed itself: that the lack of a transcript of a [NGRI] plea was a due process violation." [Sugg. in Support of Pet. for Writ of Cert., p. 5]

We note first that the State's assertion mischaracterizes the habeas court's concern. The State and Swickheimer *agree* that although the parties were present in court on July 9, 2007, no on-the-record proceedings were conducted on that date. The habeas court's reference to the lack of a transcript was ancillary to its principle concern that Swickheimer's due process rights were violated because no on-the-record proceedings were conducted to determine that Swickheimer had no defense other than NGRI, and that the NGRI plea was knowingly and voluntarily entered. The State's contention that the habeas court issued the writ of habeas corpus merely because there was no transcript, a claim not expressly made by Swickheimer, is without merit because it misstates the basis for granting the writ.

Moreover, even were we to agree with the State's characterization of the habeas court's ruling, which we do not, it is not necessary that a writ of habeas corpus be issued based on a claim pled in a habeas petition. Rule 91.06 provides:

> Whenever any court of record, or any judge thereof, shall have evidence from any judicial proceedings had before such court or judge that any person is illegally confined or restrained of liberty within the jurisdiction of such court or judge, it shall be the duty of the court or judge to issue a writ of habeas corpus for the person's relief, *although no petition be presented for such writ*.

(Emphasis added.) A court's *sua sponte* obligation to issue a writ of habeas corpus "although no petition be presented for such writ" negates the State's contention that

17

habeas claims must be preserved in habeas pleadings as a condition of affording habeas relief. The State's reliance on *McClain v. Hartley*, 320 S.W.3d 183 (Mo. App. E.D. 2010) is thus misplaced. In *McClain*, relief from a contract afforded to a plaintiff on a theory not pled was deemed erroneous because a "trial court's authority is limited to such questions as are presented by the parties in their pleadings." *Id*. at 185. That principle has no application to habeas proceedings in light of Rule 91.06.

## B.

The State alternatively argues that there was no due process violation attendant to acceptance of Swickheimer's NGRI defense. In support of this contention, the State raises four distinct arguments: (i) that the lack of a transcript does not merit automatic reversal without proof of prejudice; (ii) that the habeas court's reliance on Rule 29.07(d) was erroneous as this was not a guilty plea case; (iii) that there is no authority for the proposition that a due process liberty interest is implicated when a defendant is acquitted of charges; and (iv) that section 552.030 does not require an NGRI plea to be taken in open court and on-the-record or for the defendant to personally sign a notice of exclusivity of defense, and the only procedural requirements for accepting an NGRI plea were satisfied. We address these arguments in turn.

### (i) *Habeas relief was not granted because of the lack of a transcript*

The State argues that the lack of a transcript does not merit automatic reversal without proof of prejudice. We have already explained that the habeas court did not grant a writ of habeas corpus because there was no transcript. The habeas court granted a writ of habeas corpus because there was no on-the-record inquiry of Swickheimer confirming

18

that he had no other defense besides NGRI, and that his assertion of the NGRI defense was knowing and voluntary. We address, *infra*, whether acceptance of Swickheimer's NGRI plea without an on-the-record proceeding violated Swickheimer's due process rights.

(ii) ***The habeas court did not conclude that Rule 29.07(d) applies to the NGRI defense***

The State asserts that the habeas court committed legal error because it relied on Rule 29.07(d) to grant habeas relief when that Rule applies only to the withdrawal of guilty pleas. It is true that the habeas court concluded that Swickheimer's "due process rights were violated, a manifest injustice occurred and he is entitled to relief," and that the habeas court then cited to Rule 29.07(d). It is also true that Rule 29.07(d) addresses the standard for permitting withdrawal of guilty pleas, and does not apply by its plain terms to NGRI pleas.

However, the habeas court's reference to Rule 29.07(d) is being taken out of context. After discussing the parallels between acceptance of the NGRI defense and acceptance of a guilty plea, and the on-the-record colloquy which must be taken from an accused to accept a guilty plea, the habeas court concluded that acceptance of Swickheimer's NGRI defense without an on-the-record colloquy violated due process. The habeas court's reference to Rule 29.07(d), which describes the standard for withdrawing guilty pleas, was by analogy. The habeas court did not hold that Rule 29.07(d) describes the procedure to be followed to accept (or to permit the withdrawal of) a NGRI plea.

19

(iii)    *A due process liberty interest is implicated when a defendant is acquitted following a NGRI plea*

The State asserts that there is no "authority for the proposition that a due process liberty interest is implicated when a defendant is acquitted of charges."  The State's argument is specious, and ignores that "[w]hen an accused is tried and acquitted[23] on the ground of mental disease or defect excluding responsibility, the court *shall order such person committed to the director of the department of mental health for custody*." Section 552.040.2 (emphasis added).

> The Due Process clause of the Fourteenth Amendment prohibits state governments from depriving 'any person of life, liberty, or property, without due process of law....' U.S. CONST. amend. XIV, § 1.  Missouri courts have construed Missouri's due process clause, article I, section 10, to be congruent with the Fourteenth Amendment's guarantees.

*Bromwell v. Nixon*, 361 S.W.3d 393, 400 (Mo. banc 2012) (citing *Doe v. Phillips,* 194 S.W.3d 833, 841 (Mo. banc 2006)).  "It is clear that 'commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protection.'" *Jones v. United States*, 463 U.S. 354, 361 (1983) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979) (emphasis added)).  Thus, "[c]ommitment proceedings, whether civil or criminal, are subject to both the equal protection and due process clauses of the Fourteenth Amendment."  *State v. Kee*, 510 S.W.2d 477, 480 (Mo. banc 1974) (citing *Specht v. Patterson*, 386 U.S. 605, 608 (1967) (other citations omitted)).  It follows that acceptance of the NGRI defense, which results in court-ordered commitment with the

---

[23]The phrase "tried and acquitted" is defined by section 552.040.1(3) to include "both pleas of mental disease or defect excluding responsibility that are accepted by the court and acquittals on the ground of mental disease or defect excluding responsibility following the procedures set forth in section 552.030."

20

Department of Mental Health, implicates a due process liberty interest even though acceptance of the defense yields an acquittal.

Where an accused complains that his commitment pursuant to section 552.040 violates due process, a writ of habeas corpus is the appropriate remedy, as habeas corpus affords redress for unlawful restraints of liberty. Rule 91.01; *see Ex parte Kent*, 490 S.W.2d at 650 (holding in a habeas corpus proceeding that the "question presented is whether petitioner is being deprived of his liberty without due process of law"). The State's contention that acceptance of the NGRI defense does not implicate due process is thus troubling in light of the fact that section 552.040.3 expressly authorizes habeas relief. Section 552.040.3 provides that "[t]he provisions of sections . . . 632.435 . . . shall apply to persons committed pursuant to subsection 2 of this section." Section 632.435 provides that "[a]ny person detained under this chapter shall be entitled to apply for a writ of habeas corpus." *See State v. McKee*, 39 S.W.3d 565, 569-70 (Mo. App. S.D. 2001). Specifically, "habeas corpus is available as a remedy for a person confined pursuant to Chapter 552 procedures if an application therefor is properly pleaded, filed in a court having jurisdiction, and facts are proven showing entitlement to relief."[24] *McKee*, 39 S.W.3d at 569, n. 6.

The State's contention that due process is not implicated because acceptance of the NGRI defense results in an acquittal is without merit.

---

[24]In addition to section 552.040.3, section 552.020.10 provides that "[a]ny person committed pursuant to subsection 9 of this section [following a determination that the accused is not competent to proceed] shall be entitled to the writ of habeas corpus upon proper petition to the court that committed him."

(iv) *The procedural requirements for accepting a NGRI plea were not followed by the State or the underlying trial court*

The State argues that section 552.030 does not require a NGRI plea to be taken in open court and on-the-record or for an accused to sign a notice of exclusivity of defense. The State also argues that the State and the trial court satisfied all of the procedural requirements for accepting a NGRI plea.

We agree that section 552.030 does not express the requirement that a NGRI plea be taken in open court and on-the-record, or the requirement that a written notice of exclusivity of defense be signed by the accused. However, we do not agree that the State and the trial court satisfied all of the procedural requirements for accepting a NGRI plea. The procedural requirements that were not satisfied in this case resulted in a violation of Swickheimer's due process rights.

The NGRI defense is a creature of statute. Section 552.030.1 provides that "[a] person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." "However, section 552.030.6 establishes a rebuttable presumption that a criminal defendant is 'free of mental disease or defect excluding responsibility.'" *State v. Lewis*, 188 S.W.3d 483, 487 (Mo. App. W.D. 2006). "This presumption is conclusive, unless 'substantial evidence of lack of such responsibility' is introduced." *Id*. (citing section 552.030.6). "Both the burden of injecting the issue and the burden of persuasion thereon are on the defendant." *Id*. (citing section 552.030.6; MAI-CR 3d 306.2A, Note on Use 2).

22

"[T]o inject the issue of the NGRI defense in the case, [section 552.030.2] requires the defendant to either plead NGRI, at the time of arraignment, or file a written notice of his intent to rely on the defense within ten days of pleading not guilty, or a later date for good cause shown.'" *Id*. "Hence, the NGRI defense, as provided in section 552.030.1, *is an affirmative defense that must be initiated and proven by the defendant*." *Id*. (*citing Kee*, 510 S.W.2d at 480; MAI-CR 3d 306.2A, Note on Use 2) (emphasis added). It is thus reversible error for the State or a trial court to inject the defense of NGRI on an accused's behalf. *Id*. at 488, 490 (reversing a determination following trial that an accused was NGRI where the defense had been injected by the State and the trial court, noting that "the issue of the NGRI defense is not in the case for consideration by the trial court, unless and until it is properly injected in the case [by the accused], in accordance with section 552.030.2"); *State ex rel. Proctor v. Bryson*, 100 S.W.3d 775, 778 (Mo. banc 2003) (granting a writ of prohibition to prohibit trial court from ordering an accused to submit to a criminal responsibility evaluation in connection with a possible NGRI defense when the accused had not injected the defense on her own accord).

The essence of the NGRI defense is that an accused "committed a criminal act," but "did not appreciate that what he did was wrong or, if he did know it was wrong, he was incapable of conforming to the requirements of the law." *Kee*, 510 S.W.2d at 480. *See also Jones*, 463 U.S. at 363 (holding that a verdict of NGRI establishes that the accused committed a criminal offense because of mental illness). That said, an accused who asserts the NGRI defense is not limited to that defense. Section 552.030.2 provides that "a plea or notice [of intent to rely on the defense of NGRI] *shall not deprive the*

23

*accused of other defenses*." [Emphasis added.] Thus, an accused is not foreclosed from asserting defenses which could yield an outright acquittal while simultaneously asserting NGRI, a defense which admits the commission of a crime, but nonetheless yields an acquittal followed by confinement for an indeterminate period of time with the Department of Mental Health. Section 552.040.

Because NGRI is an affirmative defense that only the accused has the authority to raise, and because an accused is not required to assert the NGRI defense to the exclusion of other defenses, Chapter 552 imposes strict procedural limits on the trial court's authority to require an accused to submit to a NGRI mental evaluation, and on the State's and the trial court's authority to accept a NGRI plea.[25]

Section 552.030.2 provides that "[t]he state *may* accept a defense of mental disease or defect excluding responsibility, whether raised by plea or written notice, *if the accused has no other defense and files a written notice to that effect*." (Emphasis added.) Section 552.030.2 also provides that "[t]he state *shall not* accept a defense of mental disease or defect excluding responsibility in the absence of any pretrial evaluation as described in this section or section 552.020." (Emphasis added.)

Section 552.030.2 provides that "[u]pon the state's acceptance of the defense of mental disease or defect excluding responsibility, the court *shall* proceed to order the commitment of the accused as provided in section 552.040. . . ." (Emphasis added.) Though section 552.030.2 is written in absolute terms, a "trial court's power under

_____

[25]If the NGRI defense is asserted but not accepted by the State and the trial court, then the defense will be determined by the fact finder at trial, presuming the accused introduces "substantial evidence of lack of [criminal] responsibility." Section 552.030.6.

24

[section 552.030.2] to order commitment of an accused. . . predicated upon . . . a [NGRI] plea or notice of intent to so plead, is dependent upon an acceptance thereof by the [State] *that is statutorily valid*." *Briggs v. State*, 509 S.W.2d 154, 158 (Mo. App. K.C. Dist. 1974) (emphasis added). The conditional nature of the trial court's authority to enter an order of commitment is also expressed in section 552.020.4 which provides that "[a] plea of not guilty by reason of mental disease or defect *shall not* be accepted by the court in the absence of any such pretrial evaluation which supports the defense." (Emphasis added.)

The "pretrial evaluation" referred to in both section 552.030.2 and section 552.020.4 is a criminal responsibility evaluation sufficient to support the NGRI defense. Criminal responsibility evaluations are authorized by section 552.030.3 and section 552.020.4. Under both statutes, the essential predicate to the trial court's authority to order a criminal responsibility evaluation is the accused's timely injection of the NGRI defense pursuant to section 552.030.2. *Bryson*, 100 S.W.3d at 778.

Section 552.030.3 provides that once an accused has pleaded NGRI or has given written notice of the intent to do so, the court "*shall, after notice and upon motion of either the state or the accused, by order of record*"[26] appoint an authorized person to

---

[26]Section 552.030.3 actually provides that "[w]henever the accused has pleaded mental disease or defect excluding responsibility or has given the written notice provided in subsection 2 of this section, *and such defense has not been accepted as provided in subsection 2 of this section*, the court shall, after notice upon motion of either the state or accused, by order of record," appoint an evaluator to prepare a criminal responsibility report. The emphasized language seems to suggest that the State may have already accepted the NGRI defense, negating the need for a court ordered criminal responsibility report. However, we have already explained that pursuant to section 552.030.2, the State cannot accept the NGRI defense until it is timely raised by the accused, until the accused has no other defense and files a written notice of exclusivity to that effect, and until a "pre-trial evaluation" as described in section 552.030 or section 552.020 has been prepared. Moreover, the trial court has no authority to accept the NGRI defense unless a "pre-trial evaluation" prepared as authorized by section 552.030 or section 552.020 supports the

conduct a criminal responsibility evaluation of the accused, which report shall include the criminal responsibility findings required by section 552.020.4. (Emphasis added.) Section 552.020.4[27] provides that if the accused pleads or files notice of the intent to plead NGRI, the "court shall order" any competency to proceed report that has been ordered to also determine "whether, at the time of the alleged conduct, the accused, as a result of mental disease or defect, did not know or appreciate the nature, quality or wrongfulness of such accused's conduct or as a result of mental disease or defect was incapable of conforming such accused's conduct to the requirements of law." Summarized, once an accused has timely asserted the NGRI defense, a trial court must order of record, after notice and on motion, either an independent criminal responsibility report, or the inclusion of criminal responsibility findings in a competency to proceed report.

The above referenced statutes combine to require the following before the State and trial court are authorized to accept the NGRI defense: (i) the accused must first inject the defense by timely pleading NGRI or by timely filing a notice of intent to rely on the defense pursuant to section 552.030.2; (ii) thereafter, the trial court must order of record, after notice and on motion, a criminal responsibility evaluation pursuant to either section 552.030.3 or section 552.020.4; (iii) the accused must have no other defense besides

defense--an evaluation the trial court has no authority to order until the accused has injected the NGRI defense of her own accord. Thus, we see no practical way to avoid the conclusion that once an accused injects the NGRI defense, a trial court is obligated by statute to order a criminal responsibility report, because the State has no authority to accept the NGRI defense until a statutorily authorized criminal responsibility report supports the defense.

[27]The only difference between the two statutes authorizing the trial court to order a criminal responsibility evaluation is that section 552.020.4 authorizes a combined criminal responsibility/competency to proceed evaluation and report, while section 552.030.2 authorizes an independent criminal responsibility evaluation and report.

NGRI *and* must file a written notice of exclusivity to that effect pursuant to section 552.030.2; and (iv) the criminal responsibility report prepared pursuant to section 552.030.3 or section 552.020.4 must support the NGRI defense. These statutory requirements safeguard an accused's unilateral right to determine whether to assert the NGRI defense at all, and the accused's unilateral right to determine whether to pursue the NGRI defense to the exclusion of other defenses.

These statutory procedures were not followed in Swickheimer's case. The July 9, 2007 order and judgment committing Swickheimer confirms that the State and the underlying trial court relied on the April 9, 2007 criminal responsibility report to accept Swickheimer's NGRI defense. However, the April 9, 2007 report was not an authorized pre-trial evaluation pursuant to either section 552.030.3 or section 552.020.4 because it was ordered off-the-record before Swickheimer had asserted the NGRI defense. In addition, the April 9, 2007 report did not support the NGRI defense as it revealed that Swickheimer vehemently claimed the shooting of M.J. was accidental, rendering the report facially irreconcilable with Swickheimer's written notice of exclusivity of defense filed on July 9, 2007, and raising an unresolved bona fide doubt that Swickheimer had another defense he was not willing to waive.

### (a) *The April 9, 2007 report was not statutorily authorized*

Swickheimer was arraigned, entered a plea of NGRI, and filed a notice of intent to rely on the NGRI defense, during the same proceeding on July 9, 2007. The affirmative defense of NGRI was thus initiated by Swickheimer pursuant to section 552.030.2 on July 9, 2007. *Lewis*, 188 S.W.3d at 487. The underlying trial court had no authority to

27

order Swickheimer to submit to a criminal responsibility evaluation before July 9, 2007. *Bryson*, 100 S.W.3d at 778. And pursuant to section 552.030.3, the underlying trial court was required, once Swickheimer asserted the NGRI defense on July 9, 2007, to *thereafter* "order of record" a criminal responsibility report, after notice and by motion of either the State or the accused. That did not occur. As a result, the statutorily required "pre-trial evaluation" essential to afford the State and the trial court the authority to accept Swickheimer's NGRI defense was never ordered or prepared. Section 552.030.2; section 552.020.4.

Instead, the State and the trial court relied on the April 9, 2007 criminal responsibility report to accept Swickheimer's NGRI defense. The April 9, 2007 criminal responsibility report was not an authorized section 552.030.3 or 552.020.4 pre-trial evaluation. It was prepared 3 months *before* the NGRI defense was asserted by Swickheimer pursuant to section 552.030.2, and it was prepared without an "order of record" after notice and on motion as required by section 552.030.3.

Though no "order of record" directed preparation of the April 9, 2007 criminal responsibility report, the docket sheet nonetheless indicates that the report was ordered by the trial court. There is a "Judge/Clerk - Note" docket entry on April 10, 2007 which provides: "Checked with Dept of Mental Health, Peggy. Responsibility evaluation is being dictated." There is an earlier "Judge/Clerk - Note" docket entry on February 21, 2007 which provides that the underlying trial court granted the Department of Mental Health a 30 day extension of time based on a "letter from Dr. Maddox." Finally, there is a "Correspondence Filed" entry on February 20, 2007. The referenced correspondence is

28

a letter from Dr. Maddox with Fulton State Hospital which provides, in pertinent part: "***We received the court order*** for a Pre-Trial Psychiatric Examination for [Swickheimer] pursuant to Chapter 552 RSMo. . . . It is necessary that we request an extension of thirty (30) days in order that we may complete the examination report in a thorough fashion." (Emphasis added.) The only report prepared by Fulton State Hospital regarding Swickheimer dated after Dr. Maddox's continuance request is the April 9, 2007 criminal responsibility report.[28]

We do not know what precipitated the underlying trial court's off-the-record request for a criminal responsibility report.[29] Regardless, the underlying trial court acted in excess of its statutory authority in ordering the report. *Bryson*, 100 S.W.3d at 778 (prohibiting trial court from ordering an accused to submit to a criminal responsibility evaluation when the accused had not injected the defense in the manner required by section 552.030.2); *Lewis*, 188 S.W.3d at 487 (holding that "there is nothing in section 552.030 that would allow the trial court or the State to assert a defense of NGRI on behalf of the defendant"). By requiring Swickheimer to submit to a criminal responsibility evaluation before he had asserted the NGRI defense, the underlying trial court erroneously injected the defense on Swickheimer's behalf.

> "Neither section 552.020.2 nor 552.020.4 allows the court, or the State, to assert a defense of mental disease or defect on behalf of the defendant. When the defendant does not on her own accord assert the mental disease

---

[28]The habeas court found that acceptance of Swickheimer's NGRI defense was infected by "intentional off-the-record" proceedings. The habeas record supports this conclusion.

[29]Swickheimer testified during the habeas proceedings that he had no idea why he was required to submit to the criminal responsibility evaluation which led to the April 9, 2007 criminal responsibility report, and that he never consented to assertion of the NGRI defense on his behalf. The habeas record neither establishes nor discredits the possibility that the underlying trial court ordered Swickheimer to submit to a criminal responsibility evaluation off-the-record with Swickheimer's trial counsel's knowledge.

29

or defect defense, the court has no authority to require her to submit to an examination relating to her mental state at the time of the alleged crime."

*Lewis*, 188 S.W.3d at 487 (quoting *Bryson*, 100 S.W.3d at 778). "[T]his same reasoning would apply to section 552.030." *Id*. "[I]f the defendant has not injected the defense in the case, as provided in section 552.030.2, neither the State nor the trial court can inject or assert it for him." *Id*. at 487-88.

Here, the premature, unauthorized, criminal responsibility report positioned the State and the trial court to accept Swickheimer's NGRI defense *on the very day it was asserted*--a procedural impossibility if sections 552.020.4 and 552.030.3 are followed, as both sections mandate (and only authorize) the preparation of a criminal responsibility report *after* the NGRI defense is timely asserted *by the accused*. Reliance on an unauthorized criminal responsibility report to accept Swickheimer's NGRI defense is thus not a mere technicality that can be overlooked. Avoidance of the risk of erroneous deprivation of a due process liberty interest is at the very heart of the procedures prescribed by the General Assembly in sections 552.020 and 552.030. "In placing the burden on the defendant to inject the issue of the NGRI defense in the case, the legislature's intent is clear---the issue of the NGRI defense is not in the case for consideration by the trial court, unless and until it is properly injected in the case, in accordance with section 552.030.2." *Id*. at 488. "[U]nless the affirmative defense of NGRI is injected by the defendant, in accordance with section 552.030.2, *the trial court has no authority to acquit him of the crime charged on that ground, as provided in*

*section 552.030.7, and commit him to the custody of the DMH, as provided in section 552.040*." *Id.* (emphasis added).

We thus cannot ignore the statutory violations which subjected Swickheimer to a criminal responsibility evaluation before he had lawfully asserted the defense of NGRI; which resulted in the State and the trial court relying on a criminal responsibility report that was not the statutorily authorized pre-trial evaluation required to afford them the authority to accept the NGRI defense; and which resulted in the collapse of temporal statutory protections as Swickheimer's assertion of the NGRI defense, the State's and the underlying trial court's acceptance of the defense, and the entry of a judgment of acquittal and confinement, all occurred on the same day.

The State and the trial court had no authority to accept Swickheimer's NGRI defense in reliance on the April 9, 2007 report, and the trial court had no authority to commit Swickheimer to the custody of the Department of Mental Health. *Id.* On this record, Swickheimer is being constrained of his liberty without authority and in violation of due process.[30] Habeas relief is appropriate.

(b) *The April 9, 2007 report does not support the NGRI defense*

The April 9, 2007 criminal responsibility report suffers a second serious flaw. The April 9, 2007 report is facially irreconcilable with the notice of exclusivity of defense filed on Swickheimer's behalf on July 9, 2007, creating a bona fide doubt unresolved by

---

[30]We are not suggesting that an accused is unable to waive the procedural irregularity of a premature, unauthorized criminal responsibility report. However, the habeas court was within its discretion to conclude that did not occur here. If the State and a trial court rely on a premature, unauthorized criminal responsibility report to accept a NGRI defense, they bear the risk that acceptance of the defense will be successfully challenged as unauthorized in a later habeas proceeding. It is thus incumbent on the State and the trial court to insure that an accused's knowing, intelligent and voluntary waiver of the procedural irregularity of a premature, unauthorized criminal responsibility report is demonstrated in the record before the NGRI defense is accepted.

31

the record as to whether Swickheimer had another defense. As a result, the April 9, 2007 criminal responsibility report did not support the NGRI defense as required by section 552.030.2 and section 552.020.4.

We have already explained that the State had no authority to accept Swickheimer's NGRI defense unless Swickheimer "ha[d] no other defense *and* file[d] a written notice to that effect." Section 552.030.2 (emphasis added). And the State and the trial court had no authority to accept Swickheimer's NGRI defense in the absence of an authorized criminal responsibility report that supported the defense. Section 552.030.2, section 552.020.4.

Here, Swickheimer filed a written notice of exclusivity of defense on July 9, 2007, the same day the NGRI defense was pled. Swickheimer's written notice of exclusivity of defense constituted the "written notice to that effect" required by section 552.030.2. Ordinarily, an accused's written notice of exclusivity will also be sufficient to establish that "the accused has no other defense," the additional requirement specified by section 552.030.2. The phrase "the accused has no other defense" contemplates both the literal lack of other defenses, as well as an accused's knowing and voluntary waiver of other defenses, whether or not previously asserted. *See Kee*, 510 S.W.2d at 480 (holding that criminal commitment under sections 552.030 and 552.040 cannot be had unless the . . . *defendant waives all other defenses* and seeks acquittal on mental disease or defect and the state accepts the plea") (emphasis added).

However, a written notice of exclusivity is not sufficient to *per se* establish that an accused has no other (or has waived all other) defenses when the criminal responsibility

report that is also essential to authorize acceptance of the NGRI defense creates a bona fide doubt on that issue. Here, even if we assume, *arguendo*, that the April 9, 2007 criminal responsibility report was a statutorily authorized report (which it was not), the report observes:

> It is clear that the actions [Swickheimer] took on that day were fueled by his perception that he was under the control of another. ***It should also be noted though Mr. Swickheimer does deny the fundamental acts for which he is charged, the intentional pulling of the trigger and shooting M.J. in the chest with the BB gun. He has been clear across several interviews with this examiner in outlining the events and clearly indicating that he never had the intent to shoot her in the chest, that his intent was only to shoot himself and it was her actions, pulling the gun toward herself, that led to the shooting.*** He indicated to this examiner that he did not feel that she was intentionally shooting herself, which he has suggested in the past; rather he indicated that he thought it was an unintentional act.

(Emphasis added.) The April 9, 2007 criminal responsibility report is irreconcilable with Swickheimer's written notice of exclusivity, and creates a bona fide doubt as to whether Swickheimer had knowingly and voluntarily waived all other defenses. Unless the bona fide doubt created by the April 9, 2007 criminal responsibility report was resolved by the record available to the State and the trial court on July 9, 2007, the April 9, 2007 criminal responsibility report did not support Swickheimer's NGRI defense, and could not have been relied on to accept the defense.

The bona fide doubt created by the April 9, 2007 criminal responsibility report is not resolved by the record available to the State and the trial court on July 9, 2007. First, Swickheimer did not personally sign his written notice of exclusivity. We agree with the State that section 552.030.2 does not require an accused to sign the statutorily required

33

notice of exclusivity.[31] However, a pleading of such significance that is not signed by the accused cannot, standing alone, resolve a bona fide doubt created when the required criminal responsibility report indicates the accused is taking a position that conflicts with the notice of exclusivity.

Second, the only other materials of potential relevance that were available in the record on July 9, 2007 were Swickheimer's several competency to proceed reports. Those reports do not resolve the bona fide doubt as to whether Swickheimer had another defense he was not willing to waive.

The January 20, 2005 competency to proceed report, (which concluded that Swickheimer *was competent to proceed*--an opinion the underlying trial court did not accept), observed the following:

> Mr. Swickheimer was generally aware of the charges and allegations against him. He was aware of the seriousness of the charges and showed an understanding of the adversarial nature of the legal proceedings. Mr. Swickheimer was asked what defense he intended to offer to assess his capacity to understand or assist in developing a defense strategy, stemming logically from the facts of his case without gross distortion due to a mental disorder. He was aware of the range of possible plea options open to him. ***Mr. Swickheimer presented ideas that could be used in his defense that incorporated his knowledge of the law and his understanding of factors considered in sentencing decision. Mr. Swickheimer was able to discuss***

---

[31]Swickheimer complains that the notice was not signed by him personally, but was instead signed by counsel on his behalf. However, section 552.030.2 does not require a written notice of exclusivity of defense to be signed by the accused. And we perceive no reason to conclude that the legislature intended such a restriction to be implied *sub silentio*. *See Briggs v. State*, 509 S.W.2d 154, 155 (Mo. App. K.C. Dist. 1974) (observing that in the case before it, no written notice of exclusivity of defense had "been filed by petitioner or anyone on his behalf"). Of course, that does not mean a defendant's trial counsel is authorized to sign a notice of exclusivity of defense on his client's behalf without his client's knowledge and consent. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.") (citing 2 W. LaFave & J. Israel, Criminal Procedure section 11.6 (1984) (addressing the allocation of authority between a criminal defendant and counsel); Dix, Waiver in Criminal Procedure: A Brief for More Careful Analysis, 55 Texas L.Rev. 193 (1977) (addressing waivability and standards for waiver)).

34

*his case using concepts such as intent, mental state, alternative suspects, witness motives, and witness reliability*. Mr. Swickheimer showed a rational understanding of how investigations are conducted and could weigh the relative strength of evidence, including physical and witness evidence. Mr. Swickheimer understood the relative negative and positive implications of various plea options and was able to apply these to his case. *He understood that a Not Guilty by Reason of Mental Disease or Defect is a rare defense used in cases of severe mental disorder, and that such an outcome would mean an indeterminate sentence and conditional release.*

Mr. Swickheimer was asked a number of questions to assess his capacity to deal with his attorney. *He expressed concern that his attorney may not accept his arguments that the "case is not what it appears to be," and may not be willing to assist him in presenting alternative explanations for events*. . . . One issue remaining is that he has little insight into his mental state on admission to Fulton State Hospital. *He made it clear that irrespective of what his mental state may or may not have been, he would not consider a Not Guilty by Reason of Mental Disease of Defect type plea at this time*.

(Emphasis added.)

The December 7, 2005 competency to proceed report, (which oddly found Swickheimer competent because he understood the proceedings, but not competent to assist with his own defense), made the following observation:

Mr. Swickheimer indicated that he cannot take the advice of his attorney because his attorney is fundamentally wrong to focus on issues surrounding Mr. Swickheimer's mental illness. In a lengthy discussion Mr. Swickheimer could not conceptualize of even the possibility that his attorney may be giving him adequate legal advice. *He could not even consider a plea of Not Guilty By Reason of Mental Disease or Defect because it would be a "lie."* . . . .

*With these issues in mind, it appears that Mr. Swickheimer is unable to fully assist in his own defense because he is unable to consider rationally his legal options.* While he has the right to make poor legal decisions and to present a defense that may be inadequate and may be inaccurate, his desire to do this at this time appears to be the direct result of his mental illness rather than a rationale decision on his part.

(Emphasis added.) In effect, Swickheimer was found not competent to assist in his own defense *because* he would not consider the NGRI defense.

The June 8, 2006 competency to proceed report found Swickheimer *competent to proceed*, and in the process observed the following:

> Mr. Swickheimer continued to deny the presence of a mental illness. He is currently compliant with medications and while he denies the presence of a mental illness, he is able to conceptualize the possibility of discussing with his attorney a plea of Not Guilty by Reason of Insanity (NGRI).
>
> Mr. Swickheimer indicated that he felt that he could take advice of his attorney, and even though he feels that his past attorney's focus on an NGRI plea is inappropriate, he feels that he can at least consider the possibility and discuss it with his attorney as necessary. He indicated that he has concerns about a plea of NGRI but felt it might be in his best interest. He did express concerns that he would not be successful in the legal arena, but considered that there were some various alternative situations where various plea options might be beneficial to him. While he does not have a great deal of confidence that he will be successful in any form of legal challenge, and has resigned himself to a period of time in custody either with the Department of Mental Health of the Department of Corrections, his understanding of the situation appears to be accurate and not as a result of a delusional belief system.

Despite noting an apparent softening on the subject of the NGRI defense, the examiner who prepared the June 8, 2006 competency to proceed report subsequently emphasized in the April 9, 2007 criminal responsibility report that Swickheimer continued to insist that he had a defense to the underlying charge other than NGRI.

The competency reports, though not the basis for concluding that a bona fide doubt existed as to Swickheimer's waiver of all defenses other than NGRI, do nothing to resolve that doubt, and at best muddle the issue.

In short, because nothing in the record as of July 9, 2007 resolved the bona fide doubt created by comparing the April 9, 2007 criminal responsibility report[32] to the written notice of exclusivity of defense, the habeas court was free to conclude that Swickheimer did not knowingly and voluntarily agree to waive all other defenses. As a result, the April 9, 2007 criminal responsibility report did not support the NGRI defense as required by section 552.030.2 and section 552.020.4, leaving the State and the trial court without the authority to accept Swickheimer's NGRI defense, and the trial court without the authority to acquit on that basis and to commit Swickheimer to the custody of the Department of Mental Health.

We agree with the State that section 552.030 does not require an on-the-record hearing before the NGRI defense can be accepted.[33] However, an on-the-record hearing wherein appropriate inquiry could have been made of Swickheimer[34] represented the only

---

[32]We reiterate that the April 9, 2007 criminal responsibility report was not an authorized pre-trial evaluation sufficient to authorize acceptance of the NGRI defense.

[33]In *State v. Kee*, 510 S.W.2d 477, 479 (Mo. banc 1974), the Missouri Supreme Court addressed a challenge to the constitutionality of section 552.040 which argued that committing an accused after an NGRI plea is accepted or adjudicated by a fact finder without a hearing to determine that the accused still suffers from a mental disease or defect on the date of commitment violates the due process clause of the Fourteenth Amendment. The Supreme Court disagreed, noting that section 552.040 affords a committed individual sufficient due process via the right to petition for re-examination immediately following confinement. *Id*. at 483-84. In that context, the Supreme Court acknowledged that section 552.030 does not require a hearing before the NGRI defense is accepted. *Id*.

The due process issue presented here is very different from the issue in *Kee*. Here, we are addressing whether the State's and the trial court's acceptance of an accused's NGRI defense without the statutory authority to do so violates an accused's due process. The even broader due process issue not addressed in *Kee*, and that we need not resolve in this case, is whether, though section 552.030 does not require same, fundamental principles of due process require an on-the-record hearing before acceptance of a NGRI defense to assure that the NGRI defense is being knowingly and voluntarily asserted to the exclusion of all other defenses in light of the fact that an accepted NGRI defense will yield confinement for an indeterminate period of time.

[34]Because section 552.020.1 provides that criminal proceedings cannot proceed against an accused unless the accused is deemed competent to proceed, an accused will necessarily be competent to proceed, and could meaningfully participate in an on-the-record hearing, when the State and the trial court accept an accused's NGRI defense. *See Grantham*, 519 S.W.2d at 20 n.1 (noting in discussing whether State properly accepted accused's NGRI plea that the accused had been determined competent to proceed pursuant to section 552.020.1); *Ex Parte Kent*, 490 S.W.2d at 651 (holding that accused who was not competent to proceed could not be committed based on

37

means to resolve the bona fide doubt that existed on July 9, 2007 as to whether Swickheimer was knowingly and voluntarily asserting the NGRI defense to the exclusion of all other defenses. Under the facts and circumstances of this case, the habeas court was thus free to conclude that the failure to conduct an on-the-record proceeding to resolve that bona fide doubt before accepting the NGRI defense violated Swickheimer's due process rights. *State ex rel. Nixon v. Peterson*, 253 S.W.3d 77, 82 (Mo. banc 2008) ("'[D]ue process is flexible and calls for such procedural requirements as the particular situation demands.'") (quoting *Jamison v. Dept. of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 405 (Mo. banc 2007)).

We reached a similar result in *Briggs*, where a "competency to proceed" report was in irreconcilable conflict when it concluded on the one hand that an accused had the capacity to understand the proceedings, while it also concluded that the accused suffered a mental disease or defect at the time of the offense requiring *continuous* psychiatric hospitalization. 509 S.W.2d at 157. Though we acknowledged that section 552.020 does not require a hearing to determine competency to proceed unless a competency report is contested, we nonetheless found that the trial court abused its discretion by not conducting a hearing because the competency report "raised a 'bona fide doubt' and cast substantial suspicion upon [the accused's] mental fitness to proceed." *Id*. "[D]ue process

___

acceptance on a NGRI plea, and that matter should be remanded for proceedings until such time as accused became competent to proceed).

If an accused is not competent to proceed pursuant to section 552.020.1, and if there is no substantial probability that the accused will attain such capacity in the foreseeable future, the accused will be unable to effectively plead NGRI, and the State and the trial court will be unable to accept the defense. Instead, in such a case, the "court shall dismiss the charges without prejudice and the accused shall be discharged, but only if proper proceedings have been filed" to institute *civil* commitment proceedings against the accused. Section 552.020.11(6); *see Ex Parte Kent*, 490 S.W.2d at 651-53.

of law require[d] [the] trial court sua sponte to conduct a hearing and adjudicate the question." *Id.* (citing *Pate v. Robinson*, 383 U.S. 375, 384-85 (1966)).[35] "The statutory discretion possessed by the trial court of whether to hold a hearing . . . is impressed with a basic constitutional dimension for determining whether the granted statutory discretion is abused." *Id. See also Brizendine v. Swenson*, 302 F.Supp. 1011, 1019 (W.D. Mo. 1969) (holding that defendant was entitled to habeas relief where the record established a bona fide doubt on the subject of his competency to proceed to trial and no hearing was conducted to resolve the issue). "[T]he conviction of an accused person while he is legally incompetent violates due process, and . . . state procedures must be adequate to protect this right." *Pate*, 383 U.S. at 378 (citation omitted). We similarly conclude that the criminal commitment of an accused person violates due process where a bona fide doubt about the presence of other defenses exists after comparing the statutorily required notice of exclusivity and criminal responsibility report, and where that doubt is not resolved by or on the record before the NGRI defense is accepted.

Here, the habeas court concluded that Swickheimer's due process rights were violated because his NGRI defense was accepted without an on-the-record proceeding to determine that the defense was being knowingly and voluntarily asserted and relied on to the exclusion of other defenses. We need not go so far as to conclude that due process requires an on-the-record hearing in *every* case before the NGRI defense can be

---

[35]The Missouri Supreme Court held in *Harkins v. State*, 494 S.W.2d 7, 14 (Mo. 1973) that *Pate* requires a trial judge "to *resolve* a pretrial question of competence . . . 'where the evidence raises a "bona fide doubt" as to a defendant's competence.'" (quoting *Pate*, 383 U.S. at 385) (emphasis added). As our Opinion makes clear, an on-the-record hearing is not the only means by which a bona fide doubt can be resolved. *See State v. Mette-Njuldnir*, 465 S.W.3d 521, 530 n.12 (Mo. App. W.D. 2015). In this case, we conclude that an on-the-record hearing was required because the record did not otherwise resolve the bona fide doubt as to whether Swickheimer had waived all other defenses.

accepted.[36] We agree, however, that due process required an on-the-record hearing in this case before Swickheimer's NGRI defense could be accepted. In the absence of an on-the-record hearing resolving the bona fide doubt about whether Swickheimer had waived all defenses other than NGRI, the April 9, 2007 criminal responsibility report did not support the defense and could not be relied on to accept the defense. As a result, Swickheimer is confined in constraint of his liberty without authority and in violation of due process. Habeas relief is appropriate.

For the reasons herein explained, Swickheimer is being confined in constraint of his liberties and in violation of his due process rights. The habeas court's record granting a writ of habeas corpus to release Swickheimer from confinement with the Department of Mental Health is not quashed.

## II.

### *The Habeas Court did not Err in Refusing to Apply the Escape Rule*

The State contends that even if Swickheimer established a violation of Chapter 552 sufficient to support habeas relief, he is barred from securing that relief because he escaped from confinement. We disagree.

---

[36]Though we need not decide whether due process requires an on-the-record inquiry of an accused in every case as a condition of accepting the NGRI defense, we *strongly* encourage the practice. An accused who pleads NGRI and files a written notice of exclusivity of defense is necessarily admitting to the commission of a crime. If the defense is accepted, the accused will be acquitted, but confined with the Department of Mental Health for an indeterminate period of time, potentially in excess of the sentence the accused would have received if convicted. We agree with the habeas court that the parallels with acceptance of a guilty plea are obvious.

The State's and a trial court's authority to accept the NGRI defense is statutorily limited, leaving accepted NGRI defenses subject to habeas challenge on the basis that said authority has been exceeded. The State and trial courts are well-advised, therefore, to take every precaution to ensure that the record at the time a NGRI defense is accepted plainly demonstrates that each possessed the requisite statutory authority to accept the defense. An on-the-record inquiry of an accused at the time a NGRI defense is accepted, which addresses the accused's knowing and voluntary assertion of the defense to the exclusion of all other defenses, and the accused's awareness that confinement with the Department of Mental Health is indeterminate and may exceed the term of sentence imposed upon conviction, is a best practice that should be followed in every case.

"'The escape rule is a judicially-created doctrine that operates to deny the right of appeal to a criminal defendant who escapes justice.'" *Parsons v. State*, 383 S.W.3d 71, 73 (Mo. App. E.D. 2012) (quoting *Crawley v. State*, 155 S.W.3d 836, 837 (Mo. App. E.D. 2005)). "The escape rule is applicable to both [direct] appeals on the merits and [from] motions for post-conviction relief under Rules 29.15 and 24.035." *Id*. "However, the escape rule only applies to errors that occurred prior to and up to the time of escape." *Id*. (citing *Nichols v. State*, 131 S.W.3d 863, 865 (Mo. App. E.D. 2004)). "Determining whether to invoke the escape rule is left to the sound discretion of the appellate court." *Id*. "In applying the escape rule, the relevant inquiry is whether the escape adversely affected the criminal justice system." *Nichols*, 131 S.W.3d at 865.

The habeas court did not commit legal error by refusing to apply the escape rule to bar Swickheimer's habeas petition. The escape rule "operates to deny the ***right of appeal***" if deemed appropriate in the exercise of an appellate court's discretion. *Id*. (emphasis added). The habeas court was not an appellate tribunal. The State cites no authority for applying the escape rule to dismiss a petition for writ of habeas corpus. "'[A]n appellant is required to provide relevant and available legal authority in the argument or explain why such authority is not available.'" *WCT & D, LLC v. City of Kansas City*, 476 S.W.3d 336, 343 (Mo. App. W.D. 2015) (quoting *Moseley v. Grundy Cty. Dist. R-V Sch.*, 319 S.W.3d 510, 513 (Mo. App. E.D. 2010)).

Even if the escape rule is presumed available to dismiss a petition for writ of habeas corpus, application of the rule is subject to the exercise of discretion. The habeas court did not abuse its discretion in refusing to apply the escape rule to dismiss

41

Swickheimer's petition for writ of habeas corpus given the facts and circumstances of this case.[37] *See State v. White*, 81 S.W.3d 561, 565-66 (Mo. App. W.D. 2002) (refusing to exercise discretion to apply the escape rule to dismiss an appeal where the record demonstrated that defendant's due process rights were violated by the State's nondisclosure of a romantic relationship between detective and defendant's ex-wife). There is no indication that Swickheimer's escape "adversely affected the criminal justice system." *Nichols*, 131 S.W.3d at 865.

The habeas court did not erroneously refuse to apply the escape rule to bar Swickheimer's petition for writ of habeas corpus.

III.

### *The Habeas Court Exceeded its Authority and Abused its Discretion in Awarding Jail-time Credit.*

After granting Swickheimer a writ of habeas corpus, the habeas court's order and judgment held as follows:

> In the event [Swickheimer] is subsequently prosecuted based on the crime[] charged in this matter and [Swickheimer] shall be sentenced to the Department of Corrections, [Swickheimer] shall receive credit for all time held in jail prior to the hearing on July 9, 2007, for all time in the custody of the Department of Mental Health and for all time held in the Department of Corrections (predicated upon [Swickheimer's] 43 day escape conviction). Movant shall not receive credit for the 43 days of his escape.

The habeas court's calculation of jail-time credit was in excess of its authority and an abuse of discretion.

---

[37]Because habeas relief is the only means by which a person can challenge the legality of confinement following acceptance of a NGRI defense, application of the escape rule could leave a person confined for the rest of his or her life with no recourse for the unlawful confinement.

42

The subject of jail-time credit is not a current case or controversy ripe for determination. Swickheimer has not been convicted of the underlying charged crime, and has not been sentenced or received into the custody of the Department of Corrections, necessary conditions to the obligation to calculate jail-time credit pursuant to section 558.031. "[I]t is premature to render a judgment or opinion on a situation that may never occur." *Local Union 1287 v. Kansas City Area Transportation Authority*, 848 S.W.2d 462, 463 (Mo. banc 1993).

Moreover, section 558.031 "contemplates an administrative and not a judicial determination of the jail time to be credited." *Murphy v. State*, 873 S.W.2d 231, 232 (Mo. banc 1994) (quoting *State ex rel. Jones v. Cooksey*, 830 S.W.2d 421, 425 (Mo. banc 1992)). "As a matter of law, the sentencing court has no discretion in crediting jail time and it is the sheriff and the department of corrections, not the court, that calculate and record time served." *Id.* "Therefore, a prisoner must request credit from the executive branch's department of corrections; administrative remedies and extraordinary writs of habeas corpus and mandamus are available to compel the executive to perform its duty to credit jail time." *Id.*; *see also Roy v. Missouri Dept. of Corrections*, 23 S.W.3d 738, 743-44 (Mo. App. W.D. 2000) (holding that a declaratory judgment action seeking a determination of jail-time credit is also an available remedy in lieu of seeking habeas relief) (citing *Goings v. Missouri Dept. of Corrections*, 6 S.W.3d 906, 907-08 (Mo. banc 1999)).

The habeas record's calculation of jail-time credit is quashed.[38]

## Conclusion

The habeas record's grant of a writ of habeas corpus ordering Swickheimer released from confinement with the Department of Mental Health is not quashed. Within five days of the issuance of our mandate, the Department of Mental Health shall deliver Swickheimer into the custody of the Sheriff of Polk County, Missouri, where Swickheimer shall be held on the pending charge of Assault 1st Degree, subject to further proceedings. The import of our disposition is to vacate Swickheimer's assertion of, and the State's and the underlying trial court's acceptance of, the NGRI defense; to vacate the underlying trial court's July 9, 2007 order and judgment of commitment; and to return Swickheimer to the procedural position he was in immediately prior to July 9, 2007.[39]

The habeas record's calculation of jail-time credit is quashed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

[38]We express no opinion about the accuracy of the calculated jail-time credit. We hold only that the habeas court had no authority to determine jail-time credit.

[39]Prior to July 9, 2007, Swickheimer had been determined competent to proceed to trial. There must be "reasonable cause to believe that [Swickheimer] lacks fitness to proceed" to again subject Swickheimer to a competency to proceed evaluation. Section 552.020.1.

44